**COMMERCE BANK OF JOPLIN,**
**Plaintiff–Respondent,**

v.

**Timothy M. SHALLENBURGER and Linda Shallenburger,**
**Defendants–Appellants,**

**and**

**I.T. Financial Corporation, Defendant.**

No. 15927.

Missouri Court of Appeals,
Southern District,
Division One.

March 13, 1989.

P. Scott Buhlinger, Copeland, Scott & Whelan, Joplin, for plaintiff-respondent.

Thomas L. Williams, Roberts, Fleischaker & Williams, Joplin, for defendants-appellants.

CROW, Presiding Judge.

Commerce Bank of Joplin ("Commerce") sued Timothy M. Shallenburger ("Tim"), Linda Shallenburger and I.T. Financial Corporation on a promissory note. The trial court entered summary judgment in favor of Commerce and against the Shallenburgers which disposed of all issues between those parties, upon an express determination that there was no just reason for delay. Rule 74.01(b).[1] The Shallenburgers appeal.

Commerce's petition and the Shallenburgers' amended answer established, as be-

---

1. Rule references are to Missouri Rules of Civil    Procedure (19th ed. 1988).

tween those parties, that on June 23, 1986, the Shallenburgers and International Tours, Inc. ("International Tours"), as makers, executed a promissory note in the principal amount of $30,000 payable to the order of Commerce. The note was payable on demand, but it provided that if no demand were made it was payable in monthly installments of a specified amount beginning August 1, 1986.

Commerce's petition averred that the makers failed to timely make the required monthly payments, that as a result Commerce made written demand upon the makers on or about December 16, 1987, for payment in full of all principal and interest then due, that the makers failed and refused to pay the balance due, and that there was, as of December 28, 1987, principal and interest aggregating $18,884.88 due and unpaid. Commerce's petition also averred that about October 9, 1986, International Tours had changed its name to I.T. Financial Corporation.

The Shallenburgers' amended answer admitted the name change by International Tours but denied the other averments in the preceding paragraph. Additionally, the amended answer alleged that in early May, 1986, a representative of Commerce had informed Tim that the Joplin Agency of International Tours could be purchased and that an outstanding loan with Commerce, which was delinquent, could be assumed without additional security. Tim, according to the amended answer, understood that upon execution of a purchase agreement a new note reflecting the delinquent obligation would be executed and he would be "secondarily liable" to Commerce.

The amended answer further pled that prior to execution of the purchase agreement for the Joplin agency, representatives of International Tours submitted to Tim, for the purpose of inducing him to purchase the agency, three financial statements indicating monthly gross sales over $125,000, that in reliance on those statements Tim entered into a purchase agreement and a franchise agreement, that after signing those agreements Tim learned that in other months the gross sales were far

less than $125,000, and that the actions of International Tours constituted "actual and deliberate fraud."

The amended answer described other misrepresentations, fraud and misconduct by International Tours, but admitted that at the closing of the purchase agreement the Shallenburgers signed the $30,000 note to Commerce. The amended answer went on to plead that after the closing the "monthly gross" of the agency never exceeded $30,000, and concluded by alleging that there was no consideration for the note to Commerce, that the note was signed as a consequence of the Shallenburgers being defrauded, and that there was a failure of consideration in that the agency could not be financially successful because of the malefactions of International Tours.

Commerce, in support of its motion for summary judgment, filed an affidavit of one of its officers. The affidavit stated, among other things, that Commerce is the owner and holder of the subject note, that the makers failed to timely make the required monthly payments, that Commerce sent the makers written demand for payment on or about December 16, 1987, that the unpaid principal balance is $18,420.88, and that the accrued interest as of the date of the affidavit (February 29, 1988), was $773.96.

The Shallenburgers filed an affidavit by Tim in opposition to Commerce's motion for summary judgment. Tim's affidavit parroted the Shallenburgers' amended answer. Tim's affidavit did not dispute anything in the affidavit of Commerce's officer.

The trial court entered summary judgment in favor of Commerce and against the Shallenburgers for the amount prayed, together with costs, attorney fees and expenses of collection.

The Shallenburgers present two assignments of error. The first reads:

"The court erred in granting [Commerce's] motion for summary judgment in that [the Shallenburgers'] response and affidavit raised issues of fact and legal defenses to which [Commerce] failed to respond and which showed

[Commerce] was not entitled to judgment as a matter of law."

The argument following the point identifies the issues of fact as "accommodation, fraud in the inducement and failure of consideration." The Shallenburgers maintain that inasmuch as Commerce filed no affidavit contradicting Tim's affidavit, summary judgment was unwarranted.

As to the alleged fraud we find no averment in Tim's affidavit that the Shallenburgers signed the subject note because of any fraud on the part of Commerce. While the Shallenburgers charge International Tours with sundry fraud and misconduct, no such charge is leveled against Commerce.

The Shallenburgers' fraud theory, as we understand it, is that because they were fraudulently induced by International Tours to purchase the latter's Joplin agency, and in the course of doing so signed the subject note to Commerce, the fraud perpetrated by International Tours is available to the Shallenburgers as a defense against Commerce in an action by Commerce to collect the note.

Analogous circumstances existed in *Hancock Savings Bank v. McMahon*, 201 Iowa 657, 208 N.W. 74 (1926). McMahon, Wencks and Boie were three of the directors of a corporation that was short of funds and had no line of credit. In 1920 the corporation's board of directors decided that each director would loan the corporation $5,000 and take the corporation's note therefor. To do this a majority of the directors, McMahon included, had to borrow money themselves. Wencks was cashier of State Bank of Klemme; Boie was cashier of Hancock Savings Bank. McMahon borrowed $5,000 from the Klemme bank, giving a note therefor. He turned the $5,000 over to the corporation, which executed a note in that amount to him. Wencks borrowed $5,000 from Hancock Savings, giving a note therefor. Boie borrowed $5,000 from a third institution. In 1921 McMahon executed a $5,000 note to Hancock Savings, in consideration of which said bank surrendered its Wencks note; McMahon also received back the $5,000 note held against him by the Klemme bank.

In 1922 McMahon gave Hancock Savings a $5,000 note in renewal of the $5,000 note he had given it in 1921. Hancock Savings ultimately sued McMahon on the 1922 note. In defense McMahon maintained he received no consideration for the $5,000 note he gave the Klemme bank in 1920, that said note was delivered conditionally and the condition was broken, and that he was defrauded in that it was agreed each director would advance $5,000 to the corporation but some directors did not do so. McMahon averred he had not discovered the fraud at the time he executed the note sued on by Hancock Savings. The Supreme Court of Iowa said:

"We think the defense ... is wholly beside the mark. No fraud is charged as against the Hancock Savings Bank in obtaining [McMahon's] note [in] ... 1921. It had no claim upon him prior to that time. It did hold the note of Wencks for a like amount. That note was never impeached as a good and valid obligation. Suppose it be true that [McMahon] had a good and valid defense against the note held by the ... Klemme [bank]. [Hancock Savings] had no interest in such note, and could be in no manner affected by a defense thereto, if one had been interposed. Its acceptance of the McMahon note [in] ... 1921, in exchange for the Wencks note, was abundant consideration, regardless of whether McMahon himself received any benefit therefrom. His argument is that he had a good defense against the ... Klemme [bank], and that therefore the return of such note to him constituted no consideration. The argument is untenable. [McMahon's] case ... is presented upon the theory that his [1921] note to [Hancock Savings] ... was a mere renewal of the note to the ... Klemme [bank]. This is a mistaken premise, and has led [McMahon] quite astray. [Hancock Savings] was not a purchaser of [McMahon's] note from the ... Klemme [bank]. [Hancock Savings] never had any interest in such note. No question of holder in due course is involved. The original note executed by [McMahon], so far as [Hancock

Savings] is concerned, was so executed to [Hancock Savings] as payee. No allegation of fraud is directed to that transaction. It is simply alleged that [McMahon] had not yet discovered the fraud, and ... that, if [McMahon] proved a good defense to his note as against the ... Klemme [bank], and that he had not discovered such defense when he executed his note to [Hancock Savings], he was entitled to be discharged." 208 N.W. at 76.

The Supreme Court of Iowa reversed a trial court judgment in favor of McMahon, and held that Hancock Savings' motion for a directed verdict should have been sustained. 208 N.W. at 77[7].

In the instant case International Tours, the party the Shallenburgers allege defrauded them, is not the payee of the note, but is instead a comaker of the note along with the Shallenburgers. The Shallenburgers cite no case, and we are aware of none, holding that if A fraudulently induces B to be comaker with A of a note to C, B can use A's fraud as a defense against C when the latter sues B to collect the note. Indeed, as we shall explain when we reach the Shallenburgers' second point, the law is otherwise. Consequently, even though Tim's affidavit alleged fraud and other misconduct by International Tours, such wrongs, if proven, would constitute no defense by the Shallenburgers against Commerce.

■ In addition to fraud Tim's affidavit avers there was no consideration for the note to Commerce, and that there was a failure of consideration. As to the latter contention the Shallenburgers, as we understand their position, claim failure of consideration because, according to them, the Joplin agency they acquired from International Tours could not be operated profitably. That, of course, would not constitute a failure of any consideration the Shallen-

burgers received from Commerce for making the note.

■ As to the Shallenburgers' assertion that there was no consideration for the note, we find nothing in Tim's affidavit setting forth any facts demonstrating absence of consideration. As the note is a written promise to pay money, signed by the Shallenburgers and payable to the order of Commerce, and is for a specific sum, it imports a consideration. § 431.020 [2]; *Rotert v. Faulkner,* 660 S.W.2d 463, 468[3] (Mo.App.1983); *Burrell v. Kaiser's Estate,* 344 S.W.2d 622, 626–29[6] (Mo.App.1961). One of the consequences of such an instrument is that a person suing on it is not required to prove consideration. *Rotert,* 660 S.W.2d at 468[3]; *Burrell,* 344 S.W.2d at 626–29[6]. Failure of consideration is an affirmative defense, and the burden of proof is on the maker. *Rotert,* 660 S.W.2d at 468[3]; *Burrell,* 344 S.W.2d at 626–29[6]; *Gershon v. Ashkanazie,* 239 Mo. App. 1012, 199 S.W.2d 38, 46[7] (1946).

■ In the instant case the Shallenburgers, in their amended answer, admitted they signed the note. In a suit on a promissory note the plaintiff makes a prima facie case by producing the note admittedly signed by the defendant and showing the balance due. *Bank of Brookfield–Purdin, N.A. v. Burns,* 724 S.W.2d 262, 264[4] (Mo. App.1986); *Union Savings Bank v. Cassing,* 691 S.W.2d 513, 515 (Mo.App.1985). Section 400.3–307(2) provides that when the signatures to a negotiable instrument are admitted, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

■ Under Rule 74.04(c) summary judgment shall be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[3] When a motion for sum-

---

2. References to statutes are to RSMo 1986. Section 431.020 provides: "All instruments of writing made and signed by any person ... whereby he shall promise to pay to any other, or his order ... any sum of money ... therein men-

tioned, shall import a consideration, and be due and payable as therein specified."

3. Rule 74.04 in its present form became effective January 1, 1988. Prior to that date the rule contained paragraph "(h)" which provided that

mary judgment is made and supported as provided in Rule 74.04, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in such rule shall set forth specific facts showing that there is a genuine issue for trial. Rule 74.04(e); *Landmark North County Bank & Trust Co. v. National Cable Training Centers, Inc.*, 738 S.W.2d 886, 889 (Mo.App.1987). In the instant case the conclusional allegation in Tim's affidavit that there was no consideration for the note falls short of constituting evidence of specific facts showing there is a genuine issue for trial. *Landmark North County Bank*, 738 S.W.2d at 890[4].

It follows from what we have said that the averments of Tim's affidavit were insufficient to demonstrate that there were any facts which, if proven, would constitute a defense by the Shallenburgers against Commerce. As the pleadings established that the Shallenburgers signed the note, and the unrefuted affidavit of Commerce's officer demonstrated that Commerce was the owner and holder of the note, that the note was delinquent, and that the amount prayed for by Commerce was due, we reject the Shallenburgers' argument that the record before the trial court showed Commerce was not entitled to judgment as a matter of law. The Shallenburgers' first point is denied.

Their second point is:

"The court erred in granting summary judgment to [Commerce] ... in that the records, pleadings and discovery on file, as well as the affidavits, contain no evidence that [Commerce] was a holder in due course, and the [Shallenburgers] by their amended answer and by affidavit raised defenses which as a matter of law would be defenses which are available in actions on simple contracts and therefore [Commerce] unless a holder in due

course was not entitled to judgment as a matter of law."

The Shallenburgers base the point on § 400.3–302(1) which provides that a holder in due course is a holder who, among other things, takes a negotiable instrument for value. The Shallenburgers assert that the note in the instant case does not state it was given for value, and Commerce's petition nowhere alleges Commerce gave value. Therefore, say the Shallenburgers, Commerce cannot be a holder in due course and, under § 400.3–306, Commerce is subject to all defenses which would be available to the Shallenburgers in an action on a simple contract. While such defenses are not identified in the second point or the argument that follows it, we assume the defenses are the ones asserted by the Shallenburgers in their first point.

■ Whether Commerce is a holder in due course is immaterial.[4] Where the person attempting to enforce a note is the payee and is the person to whom the maker has given the note, the maker has available all defenses which would be available in an action on a simple contract. §§ 400.3–305 and 400.3–306; *Duggins v. Simons*, 517 S.W.2d 82, 89[1] (Mo.1974); *Christeson v. Burba*, 714 S.W.2d 183, 193[2] (Mo.App. 1986); *Haretuer v. Klocke*, 709 S.W.2d 138, 139[2] (Mo.App.1986). Accordingly, the dispositive question is not whether Commerce is a holder in due course, but whether Tim's affidavit alleged facts which, if true, would constitute a defense for the Shallenburgers in an action against them by Commerce on a simple contract.

We have already held in rejecting the Shallenburgers' first point that the averments in Tim's affidavit regarding absence of consideration and failure of consideration set forth no facts supporting either defense against Commerce. We added that

summary judgment shall not be rendered on an issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law. That provision was deleted as of January 1, 1988. *See: Hayes v. Hatfield*, 758 S.W.2d 470, 472[1] (Mo.App.1988). The summary judgment in the instant case was entered August 1, 1988.

4. Section 400.3–302(2) provides that a payee may be a holder in due course. Circumstances in which that can occur are listed in paragraph 2, Uniform Commercial Code Comment under § 400.3–302, vol. 20A, V.A.M.S. (1965) p. 515–16.

the alleged fraud of International Tours against the Shallenburgers constituted no defense for them in this action by Commerce to collect the note, and stated the explanation for that holding would appear in our discussion of the Shallenburgers' second point.

In *See v. See*, 237 S.W. 795, 799[6] (Mo. 1921), the Supreme Court of Missouri held that one cannot be charged with fraud perpetrated by a third person, and that in order to warrant the cancellation of a contract on such ground the fraud must have been committed by the party to the contract or by his procurement. That is consistent with the general rule stated in 17 C.J.S. *Contracts* § 159 (1963), that fraud of a third person will not invalidate a contract unless such third person acted under the express or implied authority of one of the contracting parties. *Accord: Bill Stremmel Motors, Inc. v. IDS Leasing Corp.*, 89 Nev. 414, 514 P.2d 654, 656–57[4] (1973); *Columbian Mut. Life Ins. Co. v. Martin*, 175 Tenn. 517, 136 S.W.2d 52, 55 (1940).

■ Nowhere in Tim's affidavit is there any averment that Commerce had any knowledge of the fraud allegedly perpetrated on the Shallenburgers by International Tours, or that International Tours acted under the express or implied authority of Commerce. It is thus clear that the alleged misdeeds of International Tours supply the Shallenburgers no defense against Commerce in this action. The Shallenburgers' contention that Tim's affidavit raised defenses available to the Shallenburgers against Commerce in actions on simple contracts is without merit. The Shallenburgers' second point is therefore denied and the summary judgment in favor of Commerce and against the Shallenburgers is affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.