DIVERSIFIED METAL FABRICATORS,
INC., Appellant,

v.

BLUE SKIES, INC., et al., Respondents.

No. WD 49674.

Missouri Court of Appeals,
Western District.

May 30, 1995.

Michael McGinness, Platte City, for appellant.

Raymond E. Moore, Independence, for respondents.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

This appeal arises from a purchase agreement and promissory note signed by respon-

dents, Kenneth and Marie Hoover, individually, and Kenneth Hoover as President and Secretary of Blue Skies, Inc. Respondents executed the note in favor of appellant in exchange for construction and installation of a 40–slip boat dock at respondents' marina on Smithville Lake in Clay County, Missouri. The trial court held that appellant, Diversified Metal Fabricators, Inc., failed to properly install the dock, thereby relieving respondents of their obligation under the promissory note. Appellant claims the trial court erred in its decision and alleges four specific points of error.

In abbreviated form, appellant first claims the trial court erred in entering judgment for respondents because appellant's introduction of the promissory note into evidence imports consideration and, once appellant proved the amount due thereunder, it established a prima facie case entitling appellant to the amount so due. Secondly, appellant claims the trial court erroneously placed the burden of proving consideration for the promissory note upon appellant. Appellant next argues the trial court erred in entering judgment for respondents because respondents did not properly plead failure of consideration and failed to prove that defense by cogent and convincing evidence. Finally, appellant asserts the trial court's judgment disregarded the evidence that appellant had substantially performed under the purchase agreement. A synopsis of the pertinent facts and procedural history is helpful before addressing each of the alleged errors.

On April 9, 1991, respondents acquired a lease hold of 22 acres upon which to operate a marina, the Little Platte Marina, at Smithville Lake. Prior to acquiring the Little Platte Marina, respondent Kenneth Hoover had been an administrator and business management consultant in the medical field. At the time of respondents' acquisition, there were approximately five docks, a marina building, a restaurant and courtesy slips for people visiting the restaurant. Respondents sought to add a 40–slip boat dock to free up the courtesy slips existing at the restaurant site. Kenneth Hoover, on behalf of Blue Skies, Inc., discussed prices for such a dock with two dock builders before securing more favorable financing arrangements from appellant.

Respondents shared with appellant their desired dock plans and the price information they had received from the two other bidders. Appellant and respondent Kenneth Hoover then met on several occasions and made some changes to the original plans. On May 13, 1991, appellant's engineer prepared a drawing of the layout and configuration of the dock. These design specifications were modified on May 15, 1991, to allow for 72″ underwater bracing and became the final plans.

On July 24, 1991, respondents and appellant entered into a "Purchase Agreement" and "Boat–Dock Specifications." The purchase agreement specifically provided that all designs and installation would be done by appellant. The price for appellant's services was $70,500.00, which respondents agreed to pay pursuant to the terms of a promissory note. The purchase agreement referred to the promissory note by a notation at the top of the agreement, "Exhibit A: Promissory Note $70,500.00."

On July 25, 1991, respondents executed and delivered the promissory note which provided, in part, for annual installments of $25,-000.00, commencing April 1, 1992, until paid in full. Respondents decided to utilize appellant's services because it was willing to finance the 40–slip dock while the other two bidders would not. Payment of the note was secured by a "Security Agreement" dated July 25, 1991, executed by respondents and designating the boat dock and ramp as collateral.

Appellant's president, Werner Beldo, and executive vice-president, Terry Beldo, subsequently met with respondent Kenneth Hoover to stake out the location for the dock's installation. Appellant's president was admittedly familiar with the marina because he kept a boat there and often visited the marina for reasons unrelated to the transaction at hand. Appellant's president testified at trial that he was present when the location was staked and that he believed it was "a real good location."

Appellant built the dock and began the two-phase installation process. However, problems were soon discovered. The dock was designed for 72″ underwater bracing and ten anchors, but the underwater bracing could not be completed because the water level was too shallow for the dock as designed and located. Some of the slips closest to the shore were not functional as a result. The 72″ bracing was specifically negotiated by respondents in their agreement with appellant. Respondents explained their need to accommodate sailboat owners who had approached respondents regarding slip leases. Sailboats apparently require deeper water than other types of boats for docking purposes. In addition, anchoring became a problem. Between late summer 1991 (when the installation began) and early 1992, six to eight of the ten anchors were set in place. The parties dispute the exact number, and the record is unclear. It appears, however, that the final two anchors were never set by appellant.

As the due date for the first installment under the note approached, respondents discussed the installation problems with appellant. Appellant's engineer admitted at trial that he had concerns about the underwater bracing from the beginning of appellant's involvement in the design, construction and installation of the subject dock. He also admitted that appellant normally checks the water depth, but that it failed to do so in this case. The parties agreed the solution was to move the dock further away from the shore and add an extension. Appellant, however, demanded additional money which respondents refused to pay.

After some negotiation, respondents paid appellant the sum of $20,000.00 by check dated June 2, 1992, and the parties agreed to share the cost of adding the extension. Respondents added the extension, but the insecure dock broke apart following some stormy weather. The anchoring and underwater bracing was not complete, and the dock became dangerously unsafe and was ordered closed by the Clay County Department of Parks and Recreation. Respondents made no other payment on the note.

Appellant then filed its "Petition for Default on Promissory Note" on August 13, 1992. Almost simultaneously, on September 2, 1992, and before respondents were served with appellant's petition, respondents filed a "Petition for Breach of Contract." Subsequently, on September 29, 1992, respondents filed a motion to consider its petition for breach of contract as a counterclaim to appellant's earlier-filed petition. On October 20, 1992, appellant filed its own motion to consolidate the two separately-filed petitions and to join in respondents' motion to consider its petition as a counterclaim. Although the parties proceeded as if the motion for consolidation was granted, no such order was entered. Appellant's counsel at trial was the second or third successor to represent appellant in this matter, and this fact partially explains the lack of follow-up regarding the motion for consolidation. Then, on October 8, 1993, appellant filed an amended petition to include a count seeking replevin. Appellant repossessed the dock prior to trial, and the replevin count was dismissed at trial. The dock's value at the time of repossession was approximately $35,000.00.

The case was tried before the court without a jury. Our review is thus governed by Rule 73.01. The judgment of the trial court will not be disturbed unless it is against the weight of the evidence, is not supported by substantial evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Due regard must be given to the trial judge's opportunity to determine the credibility of witnesses. *Leonards v. U–Jin Enters., Inc.*, 811 S.W.2d 480, 481 (Mo.App.1991).

Appellant's first point alleges the trial court erred in entering judgment for respondents because the subject promissory note was introduced into evidence without objection thereby importing consideration and establishing a prima facie case entitling appellant to the amounts due under the note. In support, appellant cites the well-established principle that a plaintiff in a suit on a promissory note makes a prima facie case by producing the note admittedly signed by the defendant and showing the balance due. Section 400.3–308(b), RSMo. Supp.1992;

*Commerce Bank of Joplin v. Shallenburger,* 766 S.W.2d 764, 768 (Mo.App.1989). Appellant relies heavily upon the presumption of consideration provided by § 431.020, RSMo. 1986.[1] Appellant argues the trial court therefore erred when it required appellant to prove performance of the purchase agreement, i.e., the consideration supporting the note.

Appellant's first point stops short, however. That is, appellant fails to appreciate the rebuttable nature of a prima facie case and of the presumption of consideration contained in § 431.020. Section 431.020 provides that a written promise to pay a specific sum of money to another (including promissory notes) signed by the promisor shall import a consideration, and the case law clearly reasons that one suing on a promissory note need not prove consideration. *MFA, Inc. v. Dettler,* 817 S.W.2d 658, 665–66 (Mo. App.1991). However, the presumption of § 431.020 that consideration exists is rebuttable. *Id.* at 666. As discussed more fully infra, respondents pled and proved inadequate performance of the purchase agreement which the parties agree provided the consideration for the note. Both parties presented evidence regarding this issue, and the trial court found in favor of respondents. We find, for the reasons detailed below, that the record contains ample evidence to support the trial judge's conclusion that respondents successfully overcame the presumption of consideration, thereby negating appellant's prima facie case.

Point I is denied.

In Point II, appellant claims the trial court erred in placing the burden of proving consideration for the promissory note upon appellant. Appellant notes that failure of consideration is an affirmative defense, Rule 55.08, with the burden of proof on the maker. *Commerce Bank of Joplin,* 766 S.W.2d at 768. After hearing two days of testimony and other evidence, the trial judge found that the purchase agreement and promissory note

created a contractual understanding between the parties whereby appellant was obligated to properly build and install the boat dock in question and respondents were thereafter obligated to pay for that dock according to the terms of the promissory note. The trial court stated,

> Everyone here in the course of their testimony in the last two days agreed that installation is the issue that I have to decide and installation was the obligation of the plaintiff according to the contract. There's been no dispute about that.
>
> \*   \*   \*   \*   \*   \*
>
> *I have to decide whether or not the installation was proper.* The burden of proof *in such evidence* is on the plaintiff. It's the plaintiff's claim, the plaintiff's obligation.

(Emphasis added). The trial court then concluded that appellant did not meet its obligation to properly install the boat dock. The court therefore relieved respondents of their obligation under the promissory note. Appellant argues this decision improperly placed the burden of proving failure of consideration for the note upon appellant.

While the trial court's choice of words in its oral findings and order may have contributed to appellant's misunderstanding, we find no reversible error. Failure of consideration is an affirmative defense, Rule 55.08, and the party claiming it has the burden of proof. *Commerce Bank of Joplin,* 766 S.W.2d at 768. However, respondents' obligation under the promissory note was conditioned upon appellant fulfilling its obligation under the purchase agreement. Appellant's petition stated,

> 8. On or around July 25, 1991, defendants executed a purchase agreement by which Plaintiff Diversified was to supply material and labor for the construction of a 40 slip boat dock at Smithville Lake.
>
> 9. On or around July 25, 1991, defendants executed a promissory note in the amount of $70,500.00 in favor of Plaintiff Diversified *to pay for the dock.* A copy of the

---

1. Section 431.020 provides that:
   All instruments of writing made and signed by any person or his agent, whereby he shall promise to pay to any other, or his order, or unto bearer, any sum of money or property therein mentioned, shall import a consideration, and be due and payable as therein specified.

promissory note is attached hereto marked Exhibit A and incorporated herein.

(Emphasis added). Furthermore, the purchase agreement made specific reference to the promissory note and provided that "All designs are to be by Diversified Metal Fabricators with Ken Hoover's approval. Installation by Diversified Metal Fabricators."

■ In effect, appellant's argument is that the presumption of consideration provided by § 431.020 relieved it of any burden of going forward with evidence relating thereto. We disagree. Where a defendant in an action on a note pleads an affirmative defense, the burden of proof in its primary sense rests upon the defendant throughout the trial, and, if he fails to discharge it, the plaintiff is entitled to recover. *Finch v. Heeb,* 131 S.W.2d 146, 149 (Mo.App.1939). But, once the defendant introduces evidence tending to show the validity of his affirmative defense, the burden of evidence then shifts to the plaintiff. *Id.*

In the case at bar, respondents met their burden of proof in that appellant failed to destroy the presumption of nonperformance created by respondents' evidence. We believe this is the burden of proof the trial court referred to in its judgment. Appellant cannot collect on the note unless it properly performed its obligations under the purchase agreement. There was substantial evidence to support the trial court's conclusion that the promissory note was conditioned upon appellant's performance under the purchase agreement and that appellant failed to properly perform. Appellant's primary argument that the design and location of the dock were simply given to it with no independent contribution by appellant is refuted by the evidence. Appellant became involved with the dock's design within five weeks of respondents' acquisition of the marina. Appellant, after discussions with respondents, made changes to the plans originally discussed with the other two bidders, and appellant was involved in the on-site staking for location of the dock. We therefore find that the trial court did not err in holding appellant failed to perform pursuant to the contract.

Point II is denied.

■ Appellant claims in Point III that the trial court erred in entering judgment for respondents because respondents did not properly plead and raise failure of consideration as a defense. Rule 55.08 requires a responding party to set forth all applicable affirmative defenses "including but not limited to ... failure of consideration." The rule also requires one asserting an affirmative defense to set forth in his pleading a short and plain statement of the facts showing that the pleader is entitled to the defense. Rule 55.08. We disagree with appellant's contention that respondents failed to plead failure of consideration as a defense or failed to provide a statement of facts showing entitlement thereto.

Respondents' answer sets forth as "Affirmative Defense One" that "Plaintiff has failed to properly complete the construction and installation of the aforementioned dock." Their "Affirmative Defense Three" states that "Defendant filed a petition in Clay County Circuit Court on September 2, 1992 alleging a breach of contract incident to this lawsuit and therefore includes said allegations by reference as if more fully stated herein." Appellant admits in its brief that the consideration for the promissory note was the construction and installation of the boat dock and connecting ramp. Yet, appellant argues that respondents "should have filed a proper counterclaim for damages if they claimed incomplete performance ..." Appellant provides no authority for this argument, and we are not inclined to agree under the facts of this case. The last sentence of Rule 55.08 states that "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court may treat the pleadings as if there had been a proper designation." Moreover, respondents presented evidence of failure of consideration without objection by appellant, and appellant presented its own evidence on the same issue in an effort to refute respondents' defense. The pleadings would thus be deemed amended to conform to the evidence. *Leonards,* 811 S.W.2d at 485. We hold that respondents pled and preserved the defense of failure of consideration.

■ Appellant also argues in Point III that respondents failed to meet their burden of proving failure of consideration by cogent and convincing evidence. Not only must respondents plead such an affirmative defense, but they must establish their claim by cogent and convincing evidence. *Gover v. Empire Bank,* 574 S.W.2d 464, 468–69 (Mo.App.1978). Appellant's claim that "no such evidence was presented" ignores the trial testimony and exhibits. The trial court discussed the evidence presented by both parties before it shifted the burden of the evidence to appellant. Only then did the court conclude that appellant failed to overcome the presumption of nonperformance as established by respondents' evidence. Whether appellant performed its contract for services was a question of fact for the trial court. Due regard is given to the opportunity of the trial judge to determine the credibility of witnesses. Rule 73.01(c)(2); *Leonards,* 811 S.W.2d at 481. Here, the trial judge evaluated the evidence offered by both parties and relied upon independent evidence from the county. There was substantial evidence to support the trial court decision that appellant failed to properly perform the services constituting the consideration for the note. Our independent review of the whole record leads to the same conclusion.

Point III is denied.

In Point IV, appellant alleges the trial court erred in that its judgment for respondents disregarded appellant's claim of substantial performance. Appellant further argues that improper installation of the dock is no defense to its attempt to collect on the note. Appellant again suggests that respondents should have filed a claim for damages. We, however, again disagree and cannot accept appellant's assertion that the trial court "placed the entire burden" on appellant to prove proper installation of the dock.

■ A contractor need not comply literally and precisely with his contract in order to receive payment if he has substantially performed his work. *McAlpine Co. v. Graham,* 320 S.W.2d 951, 954 (Mo.App.1959). But in the instant case, appellant did not substantially perform its contractual duties.

A building is substantially complete "when it has reached the state of its construction so that it can be put to the use for which it was intended even though comparatively minor items remain to be furnished or performed ...." *Husar Indus., Inc. v. A.L. Huber & Son, Inc.,* 674 S.W.2d 565, 572 (Mo.App. 1984). "Interrelated with the foregoing rules is the good faith of the contractor and the degree of defect" so that "it will not deprive an owner of the benefit of his contract." *Id.*

■ With the approval of the Clay County Department of Parks and Recreation, the respondents in this case began renting dock slips to its customers during the first phase of installation. They continued to do so until the Department of Parks and Recreation ordered the dock closed as a result of the anchoring and bracing concerns. Appellant claims this use demonstrates its substantial performance. But the trial court specifically evaluated this evidence and reasoned that "I do not take that however into consideration because apparently this dock was being rented for space and people were using it while it was actually being constructed." Substantial evidence exists to support the trial judge's determination. While appellant would characterize the lack of anchoring and underwater bracing as "minor items" not affecting its right to collect on the note, the trial court had evidence before it that discredits such a characterization. In fact, appellant's president admitted on cross-examination that if the anchoring and underwater bracing were not complete, the dock would not be complete. Appellant's president also explained that anchoring and underwater bracing are very important to a dock's stability. Without proper installation, the dock will float away and possibly break apart. Another witness for appellant testified that he monitored the dock over the 1991—1992 winter season due to stability concerns resulting from the incomplete anchoring and underwater bracing. We conclude that substantial evidence exists in the record to support the trial court's conclusion that substantial performance did not occur.

■ For the reasons detailed above, we also find that substantial evidence exists to refute appellant's alternative arguments that

respondents accepted the incomplete installation or acquiesced in the faulty performance. In support, appellant again refers to respondents rental of boat slips during installation of the dock. However, while respondents were signing slipholder leases, they were also negotiating with appellant for an amicable solution of the design and installation problems. We therefore cannot cite the trial court with error.

Finally, appellant reminds us that where an owner prevents a contractor from completing performance, the contractor's failure to complete his work is excused and he is not regarded as having breached the contract. *Hart & Son Hauling, Inc. v. MacHaffie*, 706 S.W.2d 586, 588 (Mo.App.1986). In claiming this principle applies to the instant case, appellant asserts that respondents selected the location for installation of the dock, thereby preventing appellant from installing the underwater bracing on the slips closest to the shoreline. But, as noted above, there was evidence that appellant met with respondent Kenneth Hoover at the marina and helped stake out the location before construction of the dock began. In fact, appellant's own witness admitted during trial that the location selected was in his opinion "a real good location." Additional evidence demonstrates that appellant was familiar with the Smithville Lake area and that respondents had no marina experience prior to this venture. Respondents claimed reliance on appellant's expertise is supported by the record.

Point IV is denied.

The judgment of the trial court is affirmed.

All concur.