RPM PLUMBING MECHANICAL,
INC., Appellant,

v.

JIM PLUNKETT, INC., and Associated
Indemnity Corporation,
Respondents.

No. WD 58454.

Missouri Court of Appeals,
Western District.

April 10, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 29, 2001.

Jeffrey Hensley, Kansas City, for Appellant.

Paul Odum, Kansas City, for Respondent.

SPINDEN, Chief Judge.

This case involves a dispute between a general contractor, Jim Plunkett, Inc., and its subcontractor, RPM Plumbing Mechanical, Inc., about plumbing work provided by RPM at Crestview Nursing Home in Bethany. In its lawsuit against Plunkett, RPM claimed that Plunkett owed it $18,160. After a bench trial, the circuit court entered judgment of $3160 for RPM against Plunkett and Associated Indemnity Corporation.[1]

RPM appeals. It asserts that the circuit court erred in refusing to award the entire amount of its claim because Plunkett did not plead, and was not entitled to, a set-off or recoupment. RPM also claims that the circuit court erred in not awarding prejudgment interest on the $3160. We affirm the circuit court's award of $3160 but reverse the circuit court's denial of prejudgment interest and remand for the circuit court to award prejudgment interest on the $3160.

The dispute arose from RPM's work on the Crestview project. Pursuant to the terms of the contract, RPM agreed to perform all of the project's plumbing work for $76,000. The contract specified that RPM was to install "Type L" copper plumbing pipe for an above-ground domestic water system.

When the plumbing work was nearly complete, a nursing home representative discovered that RPM had installed "Type M" copper plumbing pipes instead of "Type L." On March 6, 1997, representatives of RPM and Plunkett met with the project's architect, engineer and owner to discuss the problem. The nursing home

1. Associated Indemnity, as Plunkett's surety, provided a payment bond on the nursing home project.

considered two alternatives to resolving the problem: have all of the nonconforming pipes removed at a cost to RPM of at least $40,000 [2] or have only exposed pipes removed and replaced on the conditions that shut-off valves be installed at various points and have RPM secure a 10 year, $50,000 bond to protect the owner from problems resulting from nonconforming plumbing pipes. The owner and RPM agreed to the second alternative. Although RPM removed and replaced the exposed pipes and put in shut-off valves, RPM never provided a bond.

Because RPM did not provide a bond, Plunkett agreed to deduct $15,000 from its contract if the owner accepted the remaining non-conforming pipes. Plunkett informed RPM by letter about the settlement agreement and informed RPM that, pursuant to the terms of its subcontract, Plunkett would deduct $15,000 from the balance owing to RPM.

RPM sued Plunkett on the ground that it was entitled to the entire $18,160 balance due and that it was not bound by Plunkett's settlement with the project owner. At trial, Plunkett admitted that it owed RPM $3160 even after deducting the $15,000. The circuit court entered judgment of $3160 for RPM and did not order interest on the judgment.

In this appeal, RPM contends that the circuit court erred in not awarding the entire amount of its claim. It asserts that Plunkett was not entitled to a set-off [3] or recoupment of $15,000 because it did not plead it as an affirmative defense. RPM, however, permitted Plunkett to try the issue without objection. We deem the parties to have tried the issue by implied consent pursuant to Rule 55.33(b).

▆▆▆ Although the defense of recoupment is "generally embraced in the subject of counterclaim," it is "still available as a purely defensive matter going only to the reduction or satisfaction of the plaintiff's claim." *Brush v. Miller*, 208 S.W.2d 816, 820 (Mo.App.1948). Thus, in a case involving defective performance under a contract, a defendant can elect whether to plead "the defective work in reduction of the plaintiff's damages, or whether to plead his own damage as a counterclaim[.]" *Id.* If the defendant elects to assert it as an affirmative defense, the defendant must plead it as an affirmative defense. *Dyna Flex Limited v. Charleville*, 890 S.W.2d 413, 414 (Mo.App.1995).[4]

▆▆▆ Rule 55.33(b), however, says, "When issues not raised by the pleadings are tried by express or implied consent of

2. Some of the non-conforming plumbing pipe had been covered up by other work, such as finished drywall.

3. Although RPM asserts that Plunkett was not entitled to a set-off, Plunkett does not contend that it was entitled to a set-off. Hence, we focus on whether Plunkett was entitled to a recoupment of the $15,000.

4. RPM asserts that the Dyna Flex case stands for the proposition that the affirmative defense of recoupment must be specifically pleaded and cannot be argued for the first time at trial. We agree with this proposition; nonetheless, Rule 55.33(b) would permit a circuit court to deem the pleadings to have

been amended to conform to the evidence in cases in which a plaintiff does not object to the defense. In those cases, the plaintiff will be deemed to have tried the matter by consent. The Dyna Flex court did not address this issue. The Dyna Flex court also said that a defendant must plead affirmative defenses, and, if he or she does not, waiver of the defense results. 890 S.W.2d at 414. The Supreme Court, however, has retreated from previously used language that the defense is waived, *see Detling v. Edelbrock*, 671 S.W.2d 265, 271 (Mo. banc 1984), and now says that issues not raised in the answer are simply not raised in the lawsuit. *Green v. City of St. Louis*, 870 S.W.2d 794, 797 (Mo. banc 1994).

the parties, they shall be treated in all respects as if they had been raised in the pleadings." This means that, when evidence is admitted without objection, we will deem the pleadings to have been amended to conform to the evidence. *Seaton v. Weir*, 633 S.W.2d 212, 214 n. 4 (Mo.App.1982); *Diversified Metal Fabricators, Inc. v. Blue Skies, Inc.*, 899 S.W.2d 556, 561 (Mo.App.1995); *Stegemann v. Helbig*, 625 S.W.2d 677, 679 n. 1 (Mo.App. 1981). "[E]vidence received without objection will give rise to an amendment of. the pleadings by implied consent only when it bears solely on the proposed new issue and is not relevant to some other issue already in the case." *Kackley v. Burtrum*, 947 S.W.2d 461, 465 n. 3 (Mo.App.1997).

■ Because RPM did not object to evidence supporting the defense and that evidence was not relevant to any other issue in the case, we deem Plunkett's affirmative defense of recoupment to have been tried by implied consent. Plunkett presented the testimony of the project's engineer, Ron Mays, that the pipes installed by RPM were inferior to the pipes specified in contract documents. Dean Thompson, the owner's representative, testified that the owner deducted $15,000 from its contract with Plunkett because RPM had installed inferior pipe not meeting specifications. He said, "[W]e wanted complete replacement of the pipe, or some type of a cash reserve that would cover the cost of any damage we might have from broken lines." Jim Plunkett, Plunkett's owner, testified that, because RPM did not install the specified pipes, the owner withheld $15,000 from its payment to Plunkett, so Plunkett withheld $15,000 from its payment to RPM. The circuit court also heard testimony about the process of negotiating a resolution of the dispute, including the negotiations leading to the $15,000 settlement. This testimony was pertinent to RPM's deficient performance under the contract and the resulting damages sustained by Plunkett.

■ RPM counters that, even if the issue was tried by consent, Plunkett was not entitled to recoupment of $15,000 because Plunkett did not demonstrate that it had been damaged. RPM argues that the $15,000 figure resulted from mere speculation. We disagree. The number resulted from negotiations between Plunkett and the owner; however, it was based on the architect's evidence that a failure resulting from RPM's installing inferior pipe would cost about $20,000 to repair. Although the owner wanted at least the $20,000 as a cash reserve to cover any failures, it settled for $15,000.

■ Recoupment allows a defendant to reduce or to eliminate a plaintiff's claim if "the plaintiff has not complied with some cross-obligation under the contract on which the plaintiff sues or the plaintiff has violated some legal duty in making or performing the contract." 80 C.J.S. *Set-off and Counterclaim* § 2 (2000); *see also Russell v. Empire Storage and Ice Company*, 332 Mo. 707, 59 S.W.2d 1061, 1067 (1933).

■ RPM acknowledges that it did not comply with the terms of the contract and that the owner had a right to require removal and replacement of non-conforming pipes at RPM's expense. It argues to us that its installing shut-off valves made the system better than the one for which contract documents specified. We are not persuaded. The project engineer agreed with RPM that a system with shut-off valves was better than one without them. But that misses the point that the purpose for the shut-off valves was to fix the problem created by RPM's faulty work by isolating the failure that the project engineer anticipated that RPM's faulty work would

hasten. This did not establish that it was a better system than one without shut-off valves and using the proper pipes.

But what makes RPM's position even more untenable is its acknowledgment that it created—not a $15,000 problem—but a $40,000 one. RPM acknowledged that it was obligated, had the owner insisted on it, to replace all of the inferior pipes and that this would have cost RPM about $40,000. Plunkett did not reduce RPM's recovery by $40,000, but by $15,000. RPM does not seem to appreciate that Plunkett's settlement saved it as much as $25,000.

■■ Finally, RPM asserts that the circuit court erred in not awarding it prejudgment interest on the $3160 judgment entered against Plunkett. RPM argues that, because Plunkett admitted that it owed RPM at least $3160 under the contract, the contract provided for prejudgment interest. We agree.

At trial and in its response to interrogatories, Plunkett admitted that it owed RPM $3160 for work that RPM did on the nursing home. The only dispute between the parties was over the remaining $15,000 that Plunkett refused to pay RPM.

Plunkett asserts that "RPM was not entitled to payment of the $3160 of retainage on the Project until it provided a properly executed final lien waiver to [Plunkett]." Plunkett, however, asserts this issue for the first time on this appeal. No evidence was adduced at trial as to whether RPM provided a properly executed final lien waiver.[5]

■■ Plunkett also asserts that the circuit court's award of $3160 to RPM was based on RPM's equitable claim for *quantum meruit*. Given Plunkett's admission before trial and at trial that it owed RPM $3160 under the contract, we are not convinced that the court's judgment was based upon RPM's claim for *quantum meruit*. Instead, we conclude it was a judgment based upon a liquidated claim. "A party is entitled to prejudgment interest when the damages are liquidated or readily ascertainable." *City of St. Peters v. Hill*, 9 S.W.3d 652, 656 (Mo.App.1999).

In this case, the contract specifically provided, "Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located." The parties did not agree in writing upon the interest rate. Section 408.020, RSMo 1994, provides, however, that the legal rate of interest on contracts is nine percent. Thus, pursuant to § 408.020, RPM was entitled to nine percent interest on the $3160 judgment that Plunkett admitted it owed RPM under the contract. The circuit court erred in not awarding plaintiff pre-judgment interest. We, therefore, remand the case to the circuit court for a determination and award of prejudgment interest on the $3160 judgment for RPM.

EDWIN H. SMITH, Judge, and THOMAS H. NEWTON, Judge, concur.

---

5. The contract between Plunkett and RPM contained a provision regarding final payment which said, "Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Contract Documents, the Architect has issued a Certificate for Payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner.... Final Lien Waivers, properly executed, from the SUBCONTRACTOR AND SUBCONTRACTOR'S SUPPLIER and SUBCONTRACTORS shall be furnished PRIOR to payment of retainage."