**James L. CORNELIUS, Appellant,**

v.

**Dr. James GIPE, D. O., et al., Respondents.**

**No. KCD 31714.**

Missouri Court of Appeals, Western District.

June 9, 1981.

Readopted After Retransfer Sept. 25, 1981.

Application to Transfer Denied Dec. 14, 1981.

Bart L. Strother, Kansas City, for appellant.

William Youngs Frick, Kirksville, for respondents.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

TURNAGE, Judge.

James Cornelius brought suit against James Gipe and the Kirksville Osteopathic Hospital for medical malpractice. The jury returned a verdict in favor of both defendants. This appeal is limited to a single question of a statement made in the final argument by one of Gipe's attorneys. The case is here on an abbreviated record consisting only of the final arguments. Affirmed.

As gathered from the final arguments, both Cornelius and Gipe are osteopathic physicians. Cornelius, who was about 72 years of age, suffered a fractured hip and was treated at the Kirksville Osteopathic Hospital by Gipe in October and November, 1973. Gipe placed a pin in the hip and a plate over the upper femoral. During his hospital stay Gipe detected that Cornelius had contracted a Staph Aureus infection in the hip. Treatment was instituted and that infection seemed to clear up. The crux of the liability question appears to have hinged on whether the infection first contracted at Kirksville did in fact clear up or whether such infection persisted and went undetected by Gipe when he should have found it.

In April, 1974, when Cornelius entered Mayo Clinic, he was found to be suffering a Staph Aureus infection. Treatment there included going back into the hip and performing surgery. After his discharge from Mayo, the leg involved with the hip fracture was considerably shorter than the other.

Each side produced three physicians who testified. From the arguments it would appear their testimony was directed entirely to the question of liability on the part of Gipe.

The final arguments occurred after five days of trial. In the first part of his final argument, Mr. Oswald argued on behalf of Cornelius that the evidence showed negligent treatment on the part of Gipe. Mr. Oswald argued principally the liability question with only a brief reference to damages. With reference to damages he stated that Cornelius had lost $88,165 in earnings up to that date; he was entitled to $28,500 for pain and suffering while in the hospital; $15,500 for pain and suffering while at home; $150,000 for pain, suffering, out of pocket expenses, general damages, inability to get around, walk and sit comfortably, and to be active and do things; $123,466 for future loss of income; and $302,000 for future disability. The argument suggested that an appropriate verdict in this case would be $751,699.

Mr. Frick gave the first part of the closing argument on behalf of Gipe. His entire argument was devoted to the liability question with the aim of convincing the jury that whatever infection Cornelius was suffering at the time he entered Mayo had not been present and undetected while he was in Kirksville Hospital under the care of Gipe. No mention was made of any special

expenses or damages claimed by Cornelius. Near the end of this argument Mr. Frick stated:

"We brought you doctors from Kirksville to testify about treatment in Kirksville. We brought you Dr. English, an M.D., and a highly successful one, who has no ties to Jim Gipe and no ties to the Kirksville Osteopathic Hospital. We brought you, and examined for you, the Mayo record, the Blessing Hospital record, and now you know what is in it. I waited in vain for Dr. Coventry to mention Pseudomonas, to mention that the patient had no fever, he never told us that on TV. Now, that's the law suit.

"I think we have to remember, I know the spot you are in because I am asking you to say no to a human impulse of compassion, to help somebody who is hurt, but you see it is proper to do that only if Jim Gipe is guilty of malpractice. "Now life isn't fair, that is just the truth, and bad things happen to people, bad things happen to other people, bad things happen to us, and there is a whole bunch of public programs designed to deal with these misfortunes, Social Security, Medicare, Medicaid, and you get those no matter what your doctor does.

"MR. OSWALD: Object to that, an argument prohibited under the collateral source rule.

"THE COURT: Overruled. Proceed."

On this appeal Cornelius contends that the court committed prejudicial error by overruling the objection to the statement in final argument concerning Social Security, Medicare and Medicaid. The argument is that *Kickham v. Carter*, 335 S.W.2d 83 (Mo. 1960) forbids any reference to collateral source of payments for expenses or damages properly recoverable.

There can be no doubt as to the validity of the collateral source rule as stated in *Kickham* and similar cases. The argument could relate only to damages and by their verdict the jury never reached the issue of damages when it found in favor of the defendants. This case falls under the well settled rule quoted in *Beesley v. Howe*, 478 S.W.2d 649, 653[9] (Mo.1972):

" 'where evidence or argument is before the jury clearly bearing only upon the issue of the extent of plaintiff's damages, and the jury's verdict demonstrates that the jury has failed to reach that issue, plaintiff is not prejudiced thereby.' *Merritt v. Mantony*, Mo.Sup., 353 S.W.2d 768, 769."

Even assuming without deciding that the argument violated the collateral source rule, the argument clearly bore on damages, and by reason of the defendant's verdict, Cornelius was not prejudiced. The judgment is affirmed.

All concur.