**MFA INCORPORATED,**
**Plaintiff–Appellant,**

v.

**Greg DETTLER, Defendant–Respondent.**

**No. 17177.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 25, 1991.

James A. Broshot, Mazzei and Broshot, Charles R. Leick, of counsel, Steelville, for plaintiff-appellant.

Tom McGinn, Cuba, for defendant-respondent.

SHRUM, Presiding Judge.

In this suit on a promissory note, the holder of the note, MFA Incorporated, appeals from a judgment in favor of the defendant maker, Greg Dettler, entered in accordance with a unanimous jury verdict.

On appeal, MFA claims the trial court erred in (a) allowing prejudicial closing argument by the defendant's counsel, (b) submitting the defendant's converse instruction, and (c) refusing to sustain MFA's post-trial motions which challenged the sufficiency of the evidence to support the verdict.

Finding no prejudicial error by the trial court, we affirm.

## FACTS

In 1983, the defendant bought agricultural chemicals from Cooperative Association No. 204 for use as weed control on 40 acres of soybeans. Following the practice at the cooperative, the defendant intended to sell his soybeans to the cooperative and his chemical bill would be deducted from the crop sale proceeds. However, his 1983 crop failed because of lack of weed control. He returned his unused chemicals to the cooperative for credit in late 1983. After credits, the unpaid balance on the defendant's bill was $1,770.42. The defendant complained to the cooperative's manager that the chemicals were "bad." The manager told the defendant that he would "look into it and try to adjust the bill or take care of the matter."

The defendant continued to receive statements requesting payment on his account, and he continued to discuss the status of his account with the cooperative's manager until the manager retired in 1985. The manager repeatedly told the defendant "he would take care of it." However, because of an 18% annual finance charge levied on unpaid accounts, the defendant's account balance had grown to $3,026.79 by February 1988.

In March 1988, the defendant received a statement from the cooperative which listed "Ticket No. 37201" and described the transaction as follows:

| DESCRIPTION | AMOUNT | CHARGE | BALANCE |
|---|---|---|---|
| CREDIT | | | |
| INTEREST PATRON | 80.00– | | |
| ALLOW DOUBT ACCT | 2,946.79– | 3,026.79– | .00 |
| | NEW BALANCE DUE | | 0.00 |

In July 1988, Cooperative Association No. 204 and MFA signed a consolidation agreement. The agreement was not offered into evidence, and the record concerning the terms of the agreement is contradictory. At trial, Evelyn Carstons, area credit manager for MFA, testified there was an agreement under which MFA would purchase the assets of Cooperative Association No. 204. Yet, when asked if MFA purchased the assets of the cooperative, she replied, "I can't answer that." Further, when asked if any document existed

which listed the defendant's account with Cooperative Association No. 204 as one of the assets which was "given to MFA Incorporated ... by Cooperative Association No. 204," Carstons again replied, "I can't answer that. I do not know." When asked the balance on the defendant's account as of July 1, 1988, the consolidation date, the credit manager answered, "$3,026.79." However, when asked to identify the statement showing that balance, she identified Exhibit A–1 (the statement showing the defendant's balance with Cooperative Association No. 204 to be zero).

The defendant's evidence concerning the account balance was that his original account with Cooperative Association No. 204 showed a zero balance before MFA became involved, and he believed the zero balance resulted from an adjustment to his account because of "bad chemicals."

On April 7, 1989, in response to a series of telephone calls by Carstons to his home, the defendant went to the MFA office. He testified he went because MFA was threatening to sue him if he did not sign a promissory note. On that date he signed the promissory note for $2,826.79 which is the subject of this action.

At trial the defendant gave multiple reasons why he signed the note. He said that, at the time he signed, he had forgotten about receiving the statement showing a zero balance. He testified he was "scared of being sued" and he thought he could "buy some time" by signing the note. He also said that Carstons told him he could get credit with Ag–Mo Incorporated, an affiliate of MFA, which makes loans to farmers, if he signed the note. The defendant testified that he did not receive "anything at all of value" or "any benefit" in exchange for signing the note. MFA's evidence was that the defendant gave the note as payment on his unpaid account with Cooperative Association No. 204 which had been acquired by MFA.

Among the defenses pled by the defendant was failure of consideration. Additional facts concerning the defendant's closing argument and the challenged jury instruction will be set forth as those matters are discussed.

## CLOSING ARGUMENT

In Point I, MFA argues that the trial court erred in not granting it a new trial because of "gross misconduct" of the defendant's counsel which "inflamed the passion and prejudice of the jury and denied [MFA] a fair trial." Specifically, MFA complains that the defendant's counsel argued an unpled and unproven statute of limitation defense after repeated admonition by the court to not refer to that defense. Additionally, MFA complains that the defendant's counsel compared it and its employees to "a thief." Finally, in the argument portion (but not in the point relied on), MFA complains of other "improper argument" by the defendant's counsel.

In developing its argument, MFA first complains of a cross-examination question to Carstons, as follows:

Q: And MFA Inc. could not have sued because of the statute of limitations; is that not correct?

MR. BROSHOT: I will object to that question, Your Honor. I'd ask the court to instruct Mr. McGinn not to keep going into legal issues.

MR. McGINN: I'll withdraw that question.

THE COURT: Your—your objection will be sustained, and your request will be granted. Mr. McGinn, we've been over that several times.

MFA made no request that the jury be admonished to disregard the question and no request for a mistrial.

MFA next points to the following closing arguments by the defendant:

MR. McGINN: [T]hen to get sued in a court of law eight years later and have all these papers and your life at unrest ... that's what this case is about.

No objection was lodged by MFA to this argument. Later, in the closing argument, the following occurred:

MR. McGINN: They didn't sue on the account. Why they couldn't sue. Six years had gone by.

MR. BROSHOT: Your Honor, I object to the argument and ask the jury be instructed to disregard it. He's discussing law that is not before the court in the jury instructions.

THE COURT: That's correct. And your objection will be sustained.

MR. McGINN: Why was this note signed? Is the plaintiff corporation clever?

Thereupon, MFA's counsel asked to approach the bench and the following transpired:

MR. BROSHOT: Your Honor, I called this to the court's attention earlier. If he persists, I'm going to move for a mistrial.

THE COURT: If there's any other mention of that, that's not—hadn't been raised in any of the pleadings, but you've talked about it all day long. It's not applicable in this case as postured. And if we get into that again, I'm going to grant that.

Admonished, the defendant's counsel made no further reference to a time delay in bringing the suit and no further argument about the statute of limitations. However, MFA now complains, "Stymied in this approach, counsel then elected to close his argument by comparing MFA to a thief, and then informing the jury that, contrary to well-established practice, he would be entitled to surrebuttal after MFA's rebuttal argument." Additionally, MFA contends, it was denied a fair trial because of the defendant's argument that "they [MFA] ought to be sent back to Columbia with an important message." We reject Point I for the following reasons.

■ First, at the time the defendant's counsel made his argument, MFA's counsel made no objection to the "thief" statement, the "surrebuttal" comment, or the "send a message" argument. In the "rough and tumble" tactics of trial, counsel might overstep the bounds of propriety in argument, but not every indiscretion should automatically result in a mistrial. *Gilmore v. Union Const. Co.,* 439 S.W.2d 763, 766 (Mo. 1969). For this reason, the rule has always been that a timely and sufficient objection must be made so that the trial court can take corrective measures to remove the prejudice. *Id.* By failing to make timely objection during trial, the plaintiff waived the objections. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 616 (Mo.banc 1977); *Sherpy v. Bilyeu,* 608 S.W.2d 521, 523 (Mo. App.1980).

■ MFA did object, at least in part, to the "statute of limitations" argument and the trial court sustained the objection. The trial court also granted the relief sought by MFA, namely, an admonition to the defendant's counsel that a future "statute of limitations" argument would result in a mistrial. MFA sought no other relief. However, MFA now argues that the trial court erred because it had a duty to "restrain and purge" the argument because it was an impermissible misstatement of the law. *See, e.g., Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 641 (Mo. banc 1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988). We reject that argument for the following reasons.

■ When a trial court is confronted with a particular situation, what it should do depends on the nature of the argument, the form and character of the objection, the action requested of the court, the subsequent conduct of the offending counsel, and the issues and general atmosphere of the case. *Gilmore,* 439 S.W.2d at 766. Here, the trial court gave MFA the relief it requested and the defendant's counsel abided by the admonition given. The offending argument was made at a time far removed from the original cross-examination question about the statute of limitations. By not requesting additional relief, MFA waived the prejudicial effect—or possible prejudicial effect—of the statute of limitations argument. The trial court did not err in failing to take further action sua sponte. *Cargill, Inc., v. Hale,* 537 S.W.2d 667, 669–70 (Mo.App.1976). "A party is not entitled, in such a situation, to gamble on the verdict of the jury, and if he loses then assert in a motion for new trial or on appeal that prejudicial error resulted from the incident." *Gilmore,* 439 S.W.2d at 766.

■ The trial court has an opportunity far superior to ours to fairly appraise the impact of an argument on a jury. That is why a trial court has broad discretion in the area of closing arguments; such discretion is not lightly to be disturbed on appeal. *Midwest Materials v. Village Development*, 806 S.W.2d 477, 492 (Mo.App.1991). With those principles in mind and for the reasons given above, we conclude the trial court did not err in denying the new trial motion. Point I is denied.

## CONVERSE INSTRUCTION:

### FAILURE OR LACK OF CONSIDERATION

In Point II, MFA contends the trial court erred in submitting to the jury instruction No. 6, the defendant's converse, because it "incorrectly states the law and improperly defines the word 'consideration'." Instruction No. 6 reads:

Your verdict must be for defendant if you believe:

First, that plaintiff was the holder of the promissory note, and

Second, that there was lack or failure of consideration given for the promissory note.

The word "consideration" as used in this instruction means a benefit to the defendant, or a loss or detriment to the plaintiff.

MFA argues that the instruction submits two defenses, a "lack" of consideration and a "failure" of consideration. MFA then claims there was no evidence to support the "failure of consideration" prong of the instruction and, therefore, the trial court erred in submitting the instruction.

In making its argument, MFA relies upon *Ennis v. McLaggan*, 608 S.W.2d 557 (Mo.App.1980). In *Ennis* this court was called upon to decide, as a matter of law, whether there was a difference between "failure" and "lack" of consideration for purposes of pleading. We held that lack of

consideration was not an affirmative defense which had to be pled pursuant to Rule 55.08, whereas failure of consideration was an affirmative defense which had to be set forth by the party alleging it.[1] *Id.* at 561. We recognized that, for purposes of pleading and determining who has the burden of proof, there is a difference in the concepts. It is important that lawyers and judges recognize the difference between "lack" and "failure" of consideration in certain situations such as when pleadings are considered, when evidence is presented, and when evidentiary rulings are made. However, it does not necessarily follow that a jury must always be instructed on the differences between "lack" and "failure" of consideration.

■ "An affirmative converse jury instruction must submit an hypothesized ultimate fact issue which, if true, defeats plaintiff's claim." *Tierney v. Berg*, 679 S.W.2d 919, 921 (Mo.App.1984). Where, as here, a challenged instruction is not found in MAI, the question is whether it "follows the substantive law and can be readily understood." *Murphy v. City of Springfield*, 794 S.W.2d 275, 278 (Mo.App.1990); *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137, 144 (Mo.App.1989). When the submitted instruction is not in MAI, no error is presumed. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682 (Mo. banc 1986). To reverse a jury verdict on the ground of not-in-MAI instructional error, it must appear that the offending instruction misdirected, misled, or confused the jury; the burden to prove the error rests with the party challenging the instruction. *Id.*

Our research reveals that legal scholars, academicians, and appellate courts have defined, described, used, and applied the terms "failure", "lack", and "want" of consideration in a variety of ways. On occasion, the terms have been treated synonymously, albeit erroneously so. *See, e.g.*, *Ennis*, 608 S.W.2d at 561. *Ennis* is but one illustration of the importance of distin-

---

1. As with most "rules", this one is not without exception. If the party relying on the contract alleges the existence of consideration as a result of the operation of § 431.020, RSMo 1986, then

the other party must plead and prove lack of consideration. *Ennis*, 608 S.W.2d at 561. The text of § 431.020 is set out in note 2.

guishing "lack" and "failure" of consideration under certain circumstances.

■ Whatever the understanding of the parties and the court, we believe the jury viewed the words *lack* and *failure* generically, unaware that the words have peculiar legal significance under certain circumstances. Viewed generically, we believe the phrase "lack or failure of consideration" submitted a hypothesized ultimate fact issue which, if true, would defeat MFA's claim. *See Tierney,* 679 S.W.2d at 921. In support of our conclusion that the use of both words—*lack* and *failure*—in the instruction did not misdirect, mislead, or confuse the jury, we borrow liberally from Judge Carl Gaertner's comments in *State v. Patterson,* 649 S.W.2d 925 (Mo. App.1983) at 927–28:

> Perhaps legal scholars and academicians can detect a fine point of distinction between ["lack of consideration" and "failure of consideration"]. We do not believe that such legal niceties ... would be either discernible nor meaningful to jurors untrained in the law.... We find no prejudice to [MFA] could have resulted from the use of [both phrases in instruction No. 6].... To hold otherwise would give credence to the not always facetious bromide "instructions are written not for the ears of the jurors but for the eyes of appellate judges."

■ In the second part of Point II, MFA complains that the trial court erred in giving instruction No. 6 because it was unnecessary to define *consideration* and because the definition the court gave was incorrect. We remain guided by the principles enunciated above concerning not-in-MAI instructions, particularly that no error is presumed. *Cornell,* 712 S.W.2d at 682. While the trial court must define legal or technical terms, it need not define non-technical, readily understood words or commonly used words. *Murphy,* 794 S.W.2d at 278; *McMullin v. Politte,* 780 S.W.2d 94, 96 (Mo.App.1989). Whether to submit a definitional instruction is a matter within the sound discretion of the trial court. *De-Witt v. American Family Mut. Ins. Co.,*

667 S.W.2d 700, 711 (Mo. banc 1984); *Murphy,* 794 S.W.2d at 278.

■ MFA's entire argument that the trial court erred in defining *consideration* follows: "The term 'consideration' is an unambiguous word that requires no further definition. It was error to define." Various definitions of *consideration* are found in judicial opinions and secondary sources of authority. 17 C.J.S. *Contracts* § 70, at 747 (1963). We believe the word *consideration* is not so commonly used nor is it so non-technical that we would convict the trial court of abuse of discretion simply because it defined the word in the instruction.

MFA also complains that the definition given was wrong. We disagree. Our supreme court has approved a definition of *consideration* which closely tracks the definition used in instruction No. 6. "An applicable definition of consideration is ' "a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." ' " *Greenberg v. Morris,* 436 S.W.2d 734, 738 (Mo.1968). Courts of this state have defined "consideration for a promissory note ... as ... a benefit to the promisor, or a loss or detriment to the promisee." *Popovsky v. Griwach,* 361 Mo. 1120, 238 S.W.2d 363, 366 (1951); *Glassbrenner v. Morgan,* 296 S.W. 201, 202 (Mo. App.1927). While a more detailed definition of *consideration* might be found, we conclude that the definition in the instruction followed the substantive law and could be easily understood. *See Murphy,* 794 S.W.2d at 278.

MFA does not explain how the jury was misdirected, misled, or confused because the trial court defined *consideration* or because of the definition the court submitted. MFA fails to meet its burden in challenging the instruction. *See Cornell,* 712 S.W.2d at 682. We deny Point II.

## EVIDENCE TO SUPPORT
## GIVING THE CONVERSE INSTRUCTION

■ In Point III, MFA contends that the trial court erred in giving instruction

No. 6, the defendant's converse, because it was not supported by the evidence "as there was no evidence adduced that tended to prove that the antecedent debt owed by the defendant had been canceled before he signed the promissory note nor was there evidence adduced that valid consideration for the promissory note ceased to exist or failed thereafter." We disagree with MFA's reading of the record.

From the evidence that the manager of Cooperative Association No. 204 told the defendant that his account would be adjusted for the bad fertilizer and the evidence that the defendant received a statement from Cooperative Association No. 204 showing a zero balance, the jury could have concluded the "antecedent debt" had been canceled before the defendant signed the note.

Moreover, there was evidence from which the jury could have concluded that, at the time the note was signed, the parties believed that a promised exchange of value occurred. The defendant testified that, when he signed the note, he had forgotten that he had received the statement showing a zero balance. Carstons testified that the note was given in exchange for cancellation of the defendant's unpaid account with Cooperative Association No. 204. There was evidence that both parties were mistaken in those beliefs.

MFA assumes in its argument that there was an antecedent debt, owed by the defendant to Cooperative Association No. 204, which was in some fashion acquired by MFA. However, from the evidence at trial, the jury could have determined that MFA failed to prove its legal entitlement to the debt by means of assignment or purchase of assets or any other method of succession to the legal interests of Cooperative Association No. 204. When Carstons was asked if MFA had purchased the assets of the cooperative, she replied, "I can't answer that." Asked if any document existed which listed the defendant's account with Cooperative Association No. 204 as one of the assets which was "given to MFA Incorporated ... by Cooperative Association No. 204," she replied, "I can't answer that. I do not know." There was evidence that the defendant had no dealings with MFA and owed them nothing in the absence of MFA's ownership of his account with Cooperative Association No. 204. If the jury believed that MFA had not acquired the defendant's account from Cooperative Association No. 204 or that the account had a zero balance, then the defendant did not receive what he was promised in exchange for signing the note, i.e., cancellation of the debt.

We reject Point III.

## EVIDENCE TO OVERCOME

## PRESUMPTION OF CONSIDERATION

In its final point, MFA argues there was a presumption that the note was supported by consideration and that the defendant failed to overcome that presumption by "clear, cogent and convincing evidence of failure of consideration or lack of consideration." MFA also claims that the jury's verdict is not supported by "any probative evidence." For those reasons, MFA asserts that the trial court erred in denying its post-trial motions.

■ MFA's argument in Point IV that the defendant's evidence failed to meet the required "standard of proof" because it was not "clear, cogent and convincing evidence" is raised for the first time in this appeal. It was not included as part of the claimed errors in MFA's post-trial motions. With exceptions not applicable here, "allegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a); *Missouri Public Service Co. v. Juergens,* 760 S.W.2d 105, 106 (Mo. banc 1988). MFA's claim of error concerning the standard of proof was not presented to the trial court and has not been preserved for appellate review. *See Powell v. Hickman,* 793 S.W.2d 885, 892 (Mo.App.1990).

■ The remaining allegation of error in Point IV relates to MFA's claim that the defendant's evidence was insufficient to support the jury verdict. MFA argues that consideration for the note must be presumed. We agree. Inasmuch as the note was a written promise to pay a specific sum of money, signed by the defendant and payable to MFA, it imported a consid-

eration. § 431.020, RSMo 1986;[2] *Rotert v. Faulkner,* 660 S.W.2d 463, 468 (Mo.App. 1983). One of the consequences of signing a promissory note for a specific sum is that a person suing on it is not required to prove consideration. *Commerce Bank of Joplin v. Shallenburger,* 766 S.W.2d 764, 768 (Mo.App.1989). However, the presumption that consideration exists can be overcome by the maker of the note by showing that the note was without consideration. *People's State Bank v. Hunter,* 216 Mo.App. 334, 264 S.W. 54, 55 (1924). Section 431.020 does not prevent a showing that, in fact, there was no consideration. *Johnson v. Sovereign Camp, Woodmen of the World,* 119 Mo.App. 98, 95 S.W. 951, 953 (1906); *Ennis,* 608 S.W.2d at 561. Whether the defendant overcame the presumption of consideration is an issue of fact. In rejecting MFA's arguments in Points II and III, we determined there was sufficient evidence to support giving the converse instruction. For those same reasons, we reject Point IV.

The judgment is affirmed.

MAUS and MONTGOMERY, JJ., concur.

---

**2.** Section 431.020 provides:
   All instruments of writing made and signed by any person or his agent, whereby he shall promise to pay to any other, or his order, or unto bearer, any sum of money or property therein mentioned, shall import a consideration, and be due and payable as therein specified.