**PRECISION ELECTRIC, INC. and JD Builders, Inc., Respondents,**

v.

**EX–AMISH SPECIALTIES, INC., Appellant.**

**No. WD 75529.**

Missouri Court of Appeals, Western District.

April 23, 2013.

---

William D. Rotts, Columbia, MO, for respondents.

Andrew W. Bach, Ashland, MO, for appellant.

Before Division One: GARY D. WITT, Presiding Judge, THOMAS H. NEWTON, Judge and MARK D. PFEIFFER, Judge.

GARY D. WITT, Judge.

Precision Electric, Inc. ("Precision"), JD Builders, Inc. ("JD") and Ex–Amish Specialties, Inc. ("Ex–Amish"), each leased office space in a building which was jointly owned by the individual shareholders of these three companies through a partnership. The building had two additional tenants who had no ownership interest in the building and who are not a part of this litigation. A fire broke out that destroyed the building and caused each business to incur substantial losses to the personal property located therein. Precision and JD (collectively, "PJD") filed suit against Ex–Amish alleging that the fire was started in the office of Ex–Amish through the negligence of one of its employees and that Ex–Amish was liable for PJD's losses as a result. Following trial in the Boone County Circuit Court, the jury found liability in favor of Defendant Ex–Amish on all four counts. Plaintiffs PJD filed a Motion for a New Trial which was granted by the trial court because the issue of insurance was introduced into the trial. Defendant Ex–Amish timely appeals the trial court's grant of a new trial. For reasons explained more fully below, the trial court's grant of a new trial is reversed and the judgment of the trial court based on the jury's verdict is reinstated.

## Factual and Procedural Background

In the early morning hours of September 20, 2006, a fire broke out in a commercial building located at 600 Hillsdale in

Columbia, Missouri. The nine-thousand square foot building contained six office suites as well as warehouse and storage space. The owner of JD, David Green ("Green") went to work early that morning and discovered the building on fire. The fire department responded, but the building and contents were almost a total loss. Green called the other building owners, Emmanuel Burkholder ("Burkholder"), owner of Ex–Amish, and Todd Noordsy ("Noordsy"), owner of Precision Electric, who arrived shortly thereafter. Also present on the scene was the Assistant Fire Marshall for the City of Columbia, Lieutenant Debbie Sorrell ("Sorrell").

Sorrell questioned each owner as to who had last been in their office space prior to the fire being discovered. Burkholder stated that one of his employees, Gideon Yoder ("Yoder") had been present in his business the previous day after 5:00 p.m. doing some welding work. Burkholder then called Yoder, who was working at a nearby job site, to come back to the office site and speak to Sorrell. Yoder told Sorrell that he welded a handle back onto a tool and that he did so outside of the building. He also explained that he first ground parts of the tool with a grinder on the welding table, located inside the office space.[1] Fire inspectors also investigated other potential causes of the fire and accessed the scene multiple times. Ultimately, however, Sorrell filed a report stating that the cause of the fire was undetermined.[2]

Precision and JD filed suit against Ex–Amish seeking damages and alleging that the fire started in the office of Ex–Amish as a result of Yoder's welding. At the pretrial conference, motions *in limine* were argued, including Ex–Amish's motion to exclude any references to liability insurance. PJD argued that references to insurance should come into evidence to show why insurance investigators came to the scene thirteen days after some owners had already removed damaged and salvageable items from their businesses. They also argued that the insurance they wanted to discuss was not the liability insurance carried by the defendant, but the comprehensive insurance carried by the plaintiffs themselves. PJD asserted that they specifically wanted to be able to explain the actions of Noordsy so that he would not appear to be in violation of the fire department's instructions not to disrupt the fire scene while it was being investigated.[3] PJD stated that although case law states that liability insurance "is not supposed to be in our case ... insurance references used for any other reason are admissible because it's part of the facts and circumstances of the case."

PJD argued that "summarily granting the rule that liability insurance is not admissible in the case" is a concern because "what we're dealing with here is not liability insurance ... It's comprehensive insurance that my clients had and their own company wanting to explore notions of lia-

1. Yoder was later deposed and also testified at trial about the welding he did that day, as well as about his previous welding experience and training. Because English is Yoder's second language, he used pantomime to explain to Sorrell that he ground the tool at the welding table inside but took it outside to weld it.

2. Sorrell testified in her deposition that the cause of the fire was undetermined. However-

er, at trial she testified that although her report stated that the cause was undetermined, it was her opinion that the fire was started by the welding but that it could not be proven.

3. Noordsy moved certain items of personal property from his business and set them out so he could show the insurance investigator what had been damaged in the fire.

bility by using their own investigators." PJD argued specifically *for the admission* of the fact that PJD carried comprehensive insurance. PJD further argued that whatever money they receive is going back to their insurance companies and that PJD's owners would have "no problem identifying that [they are] here on a subrogation case." PJD contended that they would like to testify that they didn't know that insurance investigators were being sent because they "didn't know how this works." PJD also stated that it "was completely comfortable not mentioning" the liability insurance carried by Ex–Amish as long as its own insurance coverage could come in to explain why insurance investigators were on the scene thirteen days after the fire. Ex–Amish stated that it was still its preference and position that no insurance be mentioned in the case. The trial court ruled that if the fire investigator does not mention insurance, it stays out, other than the standard insurance question posed to the jury panel during *voir dire.* The court then stated that follow-up questions could come in if insurance investigators were mentioned, unless an innocuous answer was given. The court suggested that the parties work on a stipulation stating that the fire investigators who arrived on the scene were not hired by any of the parties without mentioning insurance. No such stipulation was ever offered.

At trial, plaintiffs each testified, *inter alia,* that there was nothing in their office spaces that could have caused a fire.

During the trial, references to insurance occurred on three separate occasions. The first instance occurred on the direct examination by Ex–Amish's counsel of the defendant, Burkholder:

Q: Well, if what we've heard in the trial up until this point is correct, that the Ex–Amish suite was completely de- stroyed, why would you even bother messing with this stuff?

A: You could tell by pulling things out which—which tools there was. So we brought them out and the insurance— the— they wanted to see— or I wanted to see and make a list of every one of different tools to replace them, so I could lay them out to see.

Counsel for PJD *made no objection* to the word "insurance," and Burkholder's direct examination continued and ended without another insurance reference.

The second reference to "insurance" was made by PJD's counsel. In his cross- examination of Burkholder, PJD's counsel asked the following question:

Q: You testified earlier your insurance investigator came and you spread your stuff out for him?

A: That's not correct.

At this time, Ex–Amish asked to ap- proach and reiterated its objection to any- thing related to liability insurance. Ex– Amish further asserted that Burkholder's earlier reference did not open the door to references to liability insurance. Obvious- ly, PJD's counsel did not object to this reference to insurance since he was the one who asked a question regarding insur- ance. The trial court replied as follows:

Court: I don't think it opens the door. I think it gave [PJD's counsel] an oppor- tunity to ask that question. I'm not going to let him go anywhere with it. But the fact of it is he opened the door. He's got a right to the answer. He didn't dwell on it, so don't dwell on it.

Burkholder then answered:

A: I'm not understanding your ques- tion.

Q: Let me ask it again. You indicated earlier in your testimony that you laid all your equipment out, you pulled it out so the insurance investigator could look

at it. Did you think that was the end of it?

Burkholder's response to this question did not refer in any way to "insurance."

The third time the word "insurance" was referenced occurred again during PJD's cross-examination of Burkholder. Once again, PJD *made no objection* to the reference to insurance:

Q: Even today after hearing all of the evidence, did I hear you express your opinion that the welding did not cause the fire?

A: I can't say that it did.

Q: Do you have in your opinion a reasonable degree of certainty as to what, in fact, caused the fire?

A: I do not.

Q: You consider it all then to be an open question? A: You could say that.

Q: Okay. So of course, if it's an open question, you feel like you have no financial responsibility in this outcome, the loss of your neighbors' properties?

A: (Cough) Excuse me. Sorry. Each one had their own insurance, and I thought that was each one's responsibility. I had—certainly I had my own insurance, and we also had the building insurance and that was a company building. And each one had their own insurance for their—each tenant had their own insurance. And that was— I was— I guess I wasn't smart enough to know that I was responsible for everybody else. I had no idea.

Q: So in your opinion, after that fire, it was every man for himself? Look out for number one; nobody else.

A: That's not what I stated. I lost a great deal in that, probably— I don't even want to go into how much, but it was way greater than I can recover.

Q: Would it amaze you to hear that your neighbors did not have full insurance to cover their losses? Would that amaze you?

A: I did not have, so no, it would not amaze me.

Q: You did have insurance. You said so.

At that point, Ex–Amish's counsel asked to approach the bench and moved for a mistrial. The trial court admonished the witness for saying the word "insurance" and stated the following to defense counsel:

Court: If you are making with your heart a motion for mistrial, then in my heart I will deny it . . . you opened it up.

The jury returned a verdict on the issue of liability in favor of the defendant, Ex–Amish, on all four counts.

The trial court entered a written judgment in favor of Ex–Amish. On April 26, 2012, PJD filed a Motion for a New Trial due to the "highly prejudicial introduction of insurance into the case." PJD argued that "any implication that plaintiffs' damages were covered by insurance may cause the jury to make impermissible conclusions." On June 25, 2012, the court entered an amended judgment pursuant to Rule 74.01(b)[4] adding that the matter had been bifurcated, deleting reference to an award of costs, and again discharging the defendant, Ex–Amish. The trial court made no reference to the pending motion for a new trial.

On August 1, 2012, the trial court entered a one-paragraph order granting PJD's motion for a new trial, finding that "Defendant's injection of insurance into evidence was inappropriate and highly prejudicial."

---

4. All rule references are to Missouri Court Rules (2012) unless otherwise indicated.

Ex–Amish timely appeals, arguing that the trial court abused its discretion in granting a new trial because it was (1) PJD suffered no prejudice based on the references to insurance; and (2) based on invited error since it was PJD who specifically pursued the insurance issue with Burkholder on cross-examination.

## Standard of Review

▮▮ A trial court has great discretion in determining whether to grant a new trial. *Duckett v. Troester,* 996 S.W.2d 641, 646 (Mo.App.W.D.1999) (citation omitted) *(overruled on other grounds by Spiece v. Garland,* 197 S.W.3d 594 (Mo. banc 2006)). Its decision is presumed to be correct and will be reversed on appeal only for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.* " 'It cannot be said that the trial court abused its discretion where reasonable persons could differ over the propriety of its ruling.' " *Id.* "Appellate courts should be more liberal in upholding a grant of a new trial than in awarding a new trial when the trial court denies the motion." *Nadolski v. Ahmed,* 142 S.W.3d 755, 764 (Mo.App.W.D.2004) (internal citations and quotation marks omitted). However, the granting of a motion for a new trial can be an abuse of discretion where it is based on findings that are not substantially supported by the record. *Duckett,* 996 S.W.2d at 646.

"In order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial." *Balke v. Cent. Mo. Elec. Coop.,* 966 S.W.2d 15, 25 (Mo.App.W.D.1997). A new trial is available only upon a "showing that trial error or misconduct of the prevailing party incited prejudice in the jury." *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 372 (Mo. banc 1993).

▮ The trial court is vested with broad discretion when ruling on a motion for a new trial. *Koppe v. Campbell,* 318 S.W.3d 233, 240 (Mo.App.W.D.2010) (citation omitted). However, the trial court's power is discretionary only regarding fact questions, not questions of law, and the burden is on the appellant to prove that the trial court abused its discretion when it granted the motion for a new trial for the stated reasons. *Id.* "On appeal from an order granting a new trial for a specific reason the burden is on appellant to show that the court erred in sustaining the motion upon the ground specified." *Andersen v. Osmon,* 217 S.W.3d 375, 378 (Mo.App.W.D. 2007) (internal quotation marks and citation omitted). To the extent our analysis requires us to weigh the evidence, we do so in the light most favorable to the trial court's order, pursuant to our Supreme Court's recent holding in *Badahman v. Catering St. Louis.*[5]

---

5. The Supreme Court clarified the standard of our review regarding evidentiary issues in cases where a trial court has granted a new trial based on the jury's verdict being against the weight of the evidence. *Badahman v. Catering St. Louis,* 395 S.W.3d 29, 32–34 (Mo. banc 2013). In *Badahman,* the trial court, in accordance with section 537.068, granted plaintiff's motion for additur or in the alternative a new trial. The defendant would not agree to the additur so the trial court ordered a new trial solely on the issue of damages.

*Id.* at 34–35. Though *Badahman* dealt with a motion for additur, or alternatively for a new trial, the basis for the trial court's rulings was that the evidence did not support the amount of damages awarded by the jury. *Id.* at 38– 40. Upon review, the Supreme Court affirmed the trial court's grant of a new trial but took the opportunity to clarify the standard for review of evidence upon the grant of a motion for new trial. The Court noted that the previous opinions setting forth the standards of review (reviewing the evidence in the light

With regard specifically to insurance references, "the injection of insurance can constitute reversible error if it was done in bad faith." *Hudson v. Whiteside,* 34 S.W.3d 420, 425 (Mo.App.W.D.2000) (citing *Taylor v. Republic Automotive Parts, Inc.,* 950 S.W.2d 318, 321 (Mo.App.W.D.1997)). Not every reference to insurance constitutes reversible error, however. *Hudson,* 34 S.W.3d at 425. The party alleging that the references constitute reversible error must demonstrate that it was prejudiced by the references. *Id.*

### Analysis

In Point One, Ex–Amish contends that the trial court abused its discretion in granting PJD's motion for a new trial based on references to insurance.

### A. Where No Objection is Made, No Prejudice Requiring Reversal Results

Ex–Amish points out that PJD never once objected to the use of the word "insurance" when it was raised during trial. In analyzing whether the trial court abused its discretion in determining that use of the word "insurance" created prejudice to plaintiffs, we look to the circumstances of the three instances where the word insurance was used.

The first reference to insurance was innocuous and the witness caught himself mid-sentence. There was no objection to it. The second time the word "insurance" was used came when counsel for PJD used it in a question directed to Burkholder on cross-examination. It was objected to by Ex–Amish as being in violation of the court's previous ruling, yet the trial court allowed the question because Ex–Amish's witness (Burkholder) opened the door with the first reference discussed above. The third reference came again during cross-examination of Burkholder who referred to insurance in response to a question posed to him asking if he felt "financial responsibility" for the damage done to the property of the other tenants in the building. Again, there was no objection.

Notably, at no time did PJD ever object to the use of the word "insurance" coming into evidence or request any relief from the trial court during the trial. In fact in response to Ex–Amish's motion *in limine* on the issue, PJD argued that insurance should be admitted into the trial. Likewise, in its motion for a new trial, PJD points to no allegation of an error made by the trial court regarding the issue of insurance. It could not point to a ruling that was in error since it raised no objection then or at any time until after the verdict was rendered. PJD argued only that in hindsight, references to insurance prejudiced the jury against it.

The record reveals that the only objections made to the introduction of insurance were by Ex–Amish, who had argued all along for exclusion of insurance references while PJD argued for the *inclusion* of insurance references, and specifically for the inclusion of its "comprehensive insurance" coverage carried by both JD and Precision. In *Steele v. Evenflo,* the Eastern District held that where defendants objected to evidence coming in that they deemed prejudicial, yet did not ask for a mistrial at the time, the defendants could "not now premise their demand for a new trial on this statement." 147 S.W.3d 781,

---

most favorable to the verdict in a denial of a new trial and most favorable to the moving party in the grant of a new trial) should be clarified to avoid confusion. The Court concluded that "the best way to articulate the

proper standard of review in the grant or denial of a motion for new trial is that the evidence is reviewed in 'the light most favorable to the circuit court's order.'" *Id.* at 39–40.

792 (Mo.App.E.D.2004). Here, PJD did not object at all to the testimony, much less make a request for a mistrial, yet just as in *Steele*, they later premised their demand for a new trial on the use of the word "insurance." As the Eastern District noted in *Steele*, "oddly, here we have a case in which the trial court based ... B its grant of a motion for new trial" on something that the plaintiffs "never considered to be an error at trial." 147 S.W.3d at 787. The court further determined that

> [a] review of the record also reveals that Defendants consistently opposed the second ground used by the trial court to support its grant of the Motion for New Trial. While the trial court concluded it had failed to properly ascertain jury intent after the first verdict, Defendants maintained the entirely opposite position throughout the trial and post-trial period that the jury's intent was clear ... [T]he trial court relied on a ground for reversal that Defendants ... actively objected to at every relevant stage of the litigation.

Finally, we find this case analogous to *MFA, Inc. v. Dettler*, 817 S.W.2d 658, 662 (Mo.App.S.D.1991). In *Dettler*, the appellant argued that the trial court erred in not granting its motion for a new trial because misconduct of defense counsel "inflamed the passion and prejudice of the jury and denied MFA a fair trial." *Id.* at 661. MFA claimed that certain words said in closing argument by defense counsel prejudiced the jury. *Id.* The Southern District affirmed the trial court's ruling noting that "at the time the defendant's counsel made his argument, MFA's counsel made no objection to the 'thief' statement, the 'surrebuttal' comment, or the 'send a message' argument." *Id.* at 662. It reasoned further that since not every indiscretion should automatically result in a mistrial, "the rule has always been that a

timely and sufficient objection must be made so that the trial court can take corrective measures to remove the prejudice." *Gilmore v. Union Const. Co.*, 439 S.W.2d 763, 766 (Mo. banc 1969). By failing to make a timely objection during trial, the plaintiff waived its objections. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 616 (Mo. banc 1977) (defendant waived objection to inflammatory statements when he did not object); *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo.App.W.D.1980) (failure to object to a misstatement of law in closing argument waived the objection); *see also French v. Mo. Highway and Transp. Comm'n*, 908 S.W.2d 146, 152 (Mo.App.W.D.1995) (by failing to object at all and thus not giving the trial court a chance to otherwise avoid undue prejudice, plaintiffs forfeited any right to raise the issue on appeal).

The Southern District further noted that when MFA did timely object to a statute of limitations statement made by defense counsel, "[b]y not requesting additional relief, MFA waived the prejudicial effect—or possible prejudicial effect—of the statute of limitations argument." *MFA*, 817 S.W.2d at 662. The court concluded by reasoning that "[a] party is not entitled, in such a situation, to gamble on the verdict of the jury, and if he loses then assert in a motion for new trial or on appeal that prejudicial error resulted from the incident." *Id.* (citing *Gilmore*, 439 S.W.2d at 766). Moreover, "a party will not be heard to complain of alleged error in which, by his own conduct at the trial, he joined or acquiesced." *Rouse v. Cuvelier*, 363 S.W.3d 406, 416, n. 6 (Mo.App.W.D.2012) (citation omitted). Here, the only party objecting to the word "insurance" during trial was the defendant, Ex–Amish. By not objecting, as well as by affirmatively arguing for its inclusion, PJD acquiesced to the introduction of insurance into the case.

We recently addressed these same issues in *Rouse*. There, the plaintiff alleged error when on nine specific occasions the defendant injected allegedly improper evidence into the trial. *Id.* at 416. However, of the nine occasions that plaintiff cites alleging that the defendant engaged in "improper cross-examination," the record shows that plaintiff failed to object the vast majority of the time. *Id.* By the time plaintiff objected, the evidence was already cumulative. *Id.* "A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." *Id.*

Here, PJD did not object when insurance was first mentioned and subsequently intentionally injected the issue into a question posed by PJD's counsel to Burkholder the second time it was mentioned. By the third time insurance was discussed without objection by PJD, it was cumulative. PJD never objected at any point throughout the trial to this evidence.[6]

## B. An Objection to a Collateral Source Violation Must Be Specific

In cases of perceived violations of the collateral source rule,[7] although evidence of payments received from a collateral source is inadmissible over a proper objection, the error is waived in the absence of a proper and timely objection. *Crabtree v. Reed,* 494 S.W.2d 42, 44–45 (Mo. banc 1973). In *Crabtree,* during cross-examination of the plaintiff, the defendant's counsel specifically asked whether the plaintiff had insurance that had actually paid some of his medical bills. *Id.* at 45. The plaintiff admitted part of the bills had been paid by insurance. *Id.* Defense counsel then asked whether the plaintiff was seeking a double recovery. *Id.* "On appeal, the Missouri Supreme Court agreed that the defendant should not have been allowed to adduce this evidence, but denied relief on appeal because plaintiff had not objected based on the collateral source doctrine at the time the testimony was adduced." *Buatte v. Schnuck Mkts., Inc.,* 98 S.W.3d 569, 574 (Mo.App.E.D.2002) (citing *Crabtree,* 494 S.W.2d at 45).

Here, when PJD filed its motion for a new trial, it based its argument on the collateral source rule. At trial, however, it did not object at all to the word "insurance" coming into evidence and certainly did not specifically object that Burkholder's testimony violated the collateral source rule.

## C. The Grant of a New Trial Requires Prejudice

Ex–Amish argues that the trial court abused its discretion when it found

---

**6.** At oral argument, PJD argued that once insurance was injected into the trial by Burkholder, that PJD wished to offer additional evidence on the issue to further explain its arguments regarding insurance coverage to the jury, but that they were not allowed to do so by the trial court. PJD bases this argument on the trial court's statements, after Ex–Amish raised its objection to PJD's repeated questions regarding insurance, "I think we've probably said 'insurance' enough in the past two minutes" and "Your client opened it up. But no more." However, PJD made no further attempt to inject additional evidence on the subject of insurance and made no offer of proof as to what testimony or argument they wished to make in order to allow the trial court to make an informed decision on the matter. Absent a proper record before this Court, there is nothing for us to review on this argument.

**7.** "The common law collateral source rule is an exception to the rule that tort damages are only compensatory. Specifically, the rule prevents a tortfeasor from reducing his or her liability to a plaintiff by proving that payments were made to the plaintiff by a collateral source." *Deck v. Teasley,* 322 S.W.3d 536, 538 (Mo. banc 2010) (citation omitted).

prejudice to PJD based on references to insurance. "In order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial." *Balke v. Cent. Mo. Elec. Coop.*, 966 S.W.2d 15, 25 (Mo.App.W.D. 1997). A new trial is available only upon a "showing that trial error or misconduct of the prevailing party incited prejudice in the jury." *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 372 (Mo. banc 1993).

 Here, PJD filed a motion for a new trial alleging that the reference to insurance was simply prejudicial to the plaintiffs. In its two paragraph argument, PJD did not cite to one specific example of how the word "insurance" incited the jury, implying that the jury's verdict against it was enough of a showing of prejudice. But that alone is insufficient. "By both statute and rule, an appellate court is not to reverse a judgment unless it believes the error committed by the trial court against the appellant materially affected the merits of the action." *Furlong Cos., Inc. v. City of Kansas City*, 189 S.W.3d 157, 166 (Mo. banc 2006) (citation omitted). "Merely asserting error without making a showing of how that error was somehow prejudicial is not sufficient for reversal." *Id.* Other than acknowledging a defense verdict, PJD makes no showing of how use of the word "insurance," which it previously had argued vehemently should be injected into the trial, was prejudicial to it requiring that its motion for a new trial be granted.

### D. Evidence Regarding Damages Is Not Prejudicial When No Liability

 Ex–Amish contends that PJD could not have been prejudiced by a reference to insurance when the jury assessed no liability against Ex–Amish. Ex–Amish relies on the rule in Missouri that "where evidence or argument is before the jury clearly bearing only upon the issue of the extent of plaintiff's damages, and the jury's verdict demonstrates that the jury has failed to reach that issue, plaintiff is not prejudiced thereby." *Cornelius v. Gipe*, 625 S.W.2d 880, 882 (Mo.App.W.D. 1981) (citing *Beesley v. Howe*, 478 S.W.2d 649, 653 (Mo. banc 1972)). In *Cornelius*, in closing argument, defense counsel made a reference to Medicaid and Medicare being available to plaintiffs. 625 S.W.2d at 882. Plaintiff objected based on the collateral source rule, but the trial court overruled the objection. *Id.* Upon review, this court stated that "while there can be no doubt as to the validity of the collateral source rule as stated in *Kickham* [*v. Carter*, 335 S.W.2d 83 (Mo. banc 1960) ] and similar cases ... the argument could relate only to damages and by their verdict the jury never reached the issue of damages when it found in favor of the defendants [on liability]." *Id.*

We followed the reasoning of *Cornelius* when we held that a reference to insurance in a trial where the jury found a defendant to be zero percent at fault did not result in prejudice to the plaintiff. *Duckett v. Troester*, 996 S.W.2d 641, 649 (Mo.App. W.D.1999). We have also held, "[w]hen a jury finds against the plaintiff on the issue of the defendant's liability, rulings on matters relating only to the amount of damages to which the plaintiff might be entitled to receive, if the defendant was liable, cannot be considered so prejudicial as to constitute reversible error." *Lush v. Woods*, 978 S.W.2d 521, 525 (Mo.App.W.D. 1998) (citing *Miller v. Riss & Co.*, 259 S.W.2d 366, 372 (Mo. banc 1953); *Turner v. Norfolk & W. Ry. Co.*, 785 S.W.2d 569, 573 (Mo.App.W.D.1990)).

 However, we note that the last line of the verdict director regarding liabil-

ity requires the jury to find that as a result of defendant's negligent actions, plaintiff was thereby damaged. If the jury believes that the plaintiff has been fully compensated for its damages from insurance or some other collateral source, a reasonable juror could find that the defendant had no liability because the plaintiff was not damaged. Thus, the issue of damages can never be completely separated from the issue of liability. This may call into question the reasoning of some prior cases on this issue. However, our Supreme Court has embraced the rule that evidence regarding damages cannot result in prejudice where the jury finds against the plaintiff on liability. See, *Miller v. Riss & Co.*, 259 S.W.2d 366, 372 (Mo. banc 1953); *Beesley v. Howe*, 478 S.W.2d 649, 653 (Mo. banc 1972). This authority is binding on this court as we are obligated to follow Supreme Court precedent. However, because we find that the affirmative efforts by PJD to inject the issue of insurance into the case and the lack of objection to the insurance evidence by PJD are dispositive of the issues raised in this matter, we do not reach this final issue.

For all of the foregoing reasons, Point One is granted.

Because we find that the grant of Point One is dispositive on appeal, we need not address Point Two.

## Conclusion

We find that the trial court abused its discretion in granting PJD's motion for a new trial. Accordingly, the grant of the motion for new trial to PJD is reversed and the judgment of the trial court based on the jury's verdict is reinstated.

All concur.