

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| KAYLA HURLEY, | ) | ED109062 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1822-AC12890-01 |
| | ) | |
| KAREN BURTON, | ) | Honorable Thomas A. McCarthy |
| | ) | |
| Respondent. | ) | Filed: April 27, 2021 |

Plaintiff Kayla Hurley (Appellant) appeals from the trial court's judgment, following a jury trial, awarding her $15,000 in damages from Defendant Karen Burton (Respondent) in a personal injury action involving a motor vehicle accident. We affirm.

## BACKGROUND

On July 20, 2017, in the City of St. Louis, Appellant was traveling eastbound on Interstate 44 in her Honda Civic. She slowed, due to congested traffic. Respondent was driving her Jeep Cherokee in the same direction as Appellant. An eyewitness also driving in the same direction said a Jeep Cherokee cut her off while changing lanes and smashed into the Honda Civic in front of her. Appellant was stopped at impact. At the time, she reported she was shaken up but not hurt. But she later claimed she sustained an injury to her mid-back, for which she sought damages in a jury trial against Respondent, including $3 million in non-economic

damages. Respondent originally denied fault but admitted to causing the accident shortly before trial. However, she disputed the amount of damages attributable to the accident, arguing the damages were worth $3,000 to compensate Appellant for her initial six-week period of physical therapy and chiropractic care. A jury trial took place in February 2020. The following evidence was adduced.

Before the accident, Appellant had sought treatment for pain in her neck, hip, and back. After the accident, Appellant began noticing back pain in early August, although she continued her usual work schedule at a physically demanding job as an events manager and exercised regularly. She sought medical treatment with urgent care, a chiropractor, and a physical therapist. Multiple magnetic resonance imaging (MRI) studies revealed a cranially extruded disc in her thoracic spine, described by the defense as a muscle or ligament tear. On September 17, 2017, Appellant reported to her chiropractor that her mid-back pain was gone. When she was discharged from his care on October 3, 2017, she said, "I feel like myself before the accident." The physical therapist noted she met all range of motion and activity goals and was restored to her pre-accident condition.

However, in November, Appellant's attorney (Appellant's Counsel) recommended she seek additional treatment from another physical therapist, Josh Borgmeyer, who specialized in mid-back cases like hers. Because her attorney was also a friend, she trusted his recommendation. She sporadically treated with this physical therapist in hopes that he could provide long-term help with her mid-back and neck pain. However, almost a year later, on October 2, 2018, Appellant sought treatment at an orthopedic spine clinic for chronic thoracic back pain, a sharp stabbing pain, which she attributed to the accident. She reported that her physical therapy and chiropractic care were helping her, but had not resolved the pain.

On April 2, 2019, upon the recommendation of the physical therapist, Appellant was seen by a physiatrist, Dr. Patricia Hurford. She determined Appellant had mild disc protrusion in the mid-back area and recommended continued physical therapy because surgery was not an option. Dr. Helen Blake, a pain management physician, reviewed records from a prior chiropractic visit for Appellant's low back. She testified as an expert witness that Appellant's thoracic spine injuries were triggered by the motor vehicle crash, although Appellant had a degenerative condition. She said Appellant's treatment options were limited and Appellant would have to manage her pain.

Appellant testified that since her injury she felt like she was always carrying a backpack. The intensity of her pain was not consistent, however. She testified she could not exercise with the same intensity as before, and that she had difficulty fully enjoying activities with her family and long-distance travel. She had not missed any work because of the accident, was not taking medication, and did not intend to pursue surgery or injections. She provided no medical bills or other evidence of economic damages. Appellant's witnesses included her sister, her co-worker, and her boyfriend, who testified about how Appellant's back pain and injuries impacted her life.

During trial, Respondent's counsel (Defense Counsel) explained in opening statement that Appellant hired her attorney, who recommended the additional treatment from physical therapist Josh Borgmeyer. Appellant's Counsel objected on the grounds that it was a comment on Appellant's use of the legal system. Appellant's Counsel sought a mistrial, proposed two separate curative instructions, and asked to present rebuttal evidence on Appellant's reason for hiring an attorney. The trial court denied each of these requests. Appellant's Counsel asked the jury to return a verdict of $3 million for the permanent chronic injuries she received in the accident. He suggested the jury should decide on zero if it believed the range to be closer to

3

$10,000, to save Appellant's dignity. The jury returned a verdict of $15,000 in damages. Appellant filed a motion for new trial and alternative motion for additur, which the trial court denied. This appeal follows.

## DISCUSSION

Appellant raises six points on appeal. Her first three points allege the trial court abused its discretion in denying a motion for mistrial, denying curative instructions and admonishment, and denying rebuttal evidence, all with respect to Respondent's opening statement regarding Appellant hiring counsel, which Appellant alleges was improper and prejudicial.

Appellant's fourth and fifth points allege the trial court abused its discretion in denying Appellant's motion for a new trial with respect to evidentiary rulings, specifically allowing Respondent to introduce evidence of medical treatment and argue that unrelated treatment was the cause of Appellant's pain, excluding evidence of Respondent's prior abandoned pleading, and overruling Appellant's request to recall the Respondent to impeach her with the prior abandoned pleading regarding her prior inconsistent statement. Appellant's sixth point alleges the trial court erred in denying her motion for new trial because the cumulative effect of the errors resulted in substantial prejudice and injustice.

*Standard of Review*

Each of Appellant's points of alleged error fall within the "abuse of discretion" standard of review. An abuse of discretion occurs when the court's ruling is "clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Mansil v. Midwest Emergency Med. Servs.*, 554 S.W.3d 471, 475 (Mo. App. W.D. 2018). This Court reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it

4

deprived the defendant of a fair trial. *State v. Rogers*, 529 S.W.3d 906, 910 (Mo. App. E.D. 2017).

### Points I, II, and III

Appellant's first three points allege the trial court abused its discretion in denying a motion for mistrial, denying curative instructions and admonishment, and denying rebuttal evidence, all with respect to Respondent's opening statement regarding Appellant hiring counsel, which Appellant alleges was improper and prejudicial.

During opening statement, Appellant's Counsel generally described and acknowledged the gaps in Appellant's treatment. Appellant's Counsel stated, over Defense Counsel's hearsay objection, that a doctor who would not be testifying told Appellant her condition was chronic and that "you're just stuck" with it. The trial court permitted these statements, accepting Appellant's Counsel's argument that they were necessary to explain Appellant's subsequent failure to seek treatment for a period of time and were not intended to prove a chronic injury.

Respondent's opening statement provided a timeline of Appellant's treatment for the injuries she claimed were caused by the accident. Defense Counsel displayed a calendar of the date of the accident and the date when Appellant first claimed to experience back pain approximately two weeks later. The calendar showed the dates when Appellant received treatment and from various providers. It showed the months of July, August, and September 2017. Defense Counsel explained that Appellant routinely visited a physical therapist, and later a chiropractor, for approximately six weeks until September 9, 2017, when it was reported that her back pain had resolved.[1]

---

[1] The calendar was not marked as an exhibit nor admitted into evidence. Appellant made no objection to its display in conjunction with Defense Counsel's statement as an improper comment on Appellant's use of the judicial system, thus we need not discuss its effect.

Defense Counsel continued with the timeline of treatment, noting that after Appellant's initial discharge, she sought no further treatment for approximately seven weeks, until her attorney recommended that she obtain additional treatment from a new physical therapist. Defense Counsel explained:

> All right. So, September [9th], 2017,[2] whatever happened, whenever it happened, it's resolved. She goes back in for a checkup with the chiropractor, Mr. Harasha, on October 3rd, 2017, and at that point he discharges her from his care and says she's doing fine, she doesn't need anything else.
> Now, what – what happens next is where things get interesting. [Appellant] does not go for any additional treatment for about another seven weeks or so and who she goes to see is Josh Borgmeyer. This is the physical therapist that her attorney referred her to. So at this point she has been discharged from PT, been discharged from chiropractic care. She meets her lawyer. She signs up with the lawyer and gets referred by the lawyer –

Appellant objected on the grounds that the trial court had granted a motion in limine that there should be no comments on Appellant hiring counsel or her use of the legal system. At a side bar, Appellant's Counsel further argued that a curative instruction and an admonishment were needed to correct this alleged violation. Defense Counsel noted Appellant sought additional treatment from a provider recommended by her counsel shortly after meeting him, and that the circumstances under which Appellant sought this additional treatment were relevant. The trial court indicated that an instruction would be considered later, and the parties should move along.

Before the sidebar ended, Appellant moved for a mistrial, noting a curative instruction would only highlight the damning effect of the statement. The trial court permitted the fact that Appellant was referred to additional physical therapy by her attorney, but determined no further references should be made to when Appellant hired her attorney. The trial court further stated it

---

[2] Defense Counsel mistakenly stated September 19th instead of September 9th.

would still consider an instruction, and would postpone ruling on the mistrial until it had reviewed the instruction.

Later, Appellant proposed two instructions to address Defense Counsel's comments in the opening statement. First, Instruction Z repeated his opening statement regarding Appellant hiring her attorney, and then it instructed the jurors to disregard it as improper. It reasoned that the statement "violate[d] the Court's pre-trial ruling, [and] is also false and misrepresents the true facts." The instruction further admonished Defense Counsel for a statement that may have otherwise gone unnoticed by the jury. Specifically, Appellant's proposed instruction, Exhibit Z, read as follows:

> Plaintiff's Proposed Instruction and admonishment
> Yesterday during opening Statement, the attorney for the defendant said:
> "The plaintiff had been discharged from PT, discharged from chiropractic care. She meets her lawyer. She signs up with the lawyer and she gets referred by the lawyer (with regard to physical therapist Josh Borgmeyer)."
>
> You must disregard this improper statement and not consider it in arriving at your verdict. Not only did the statement violate the Court's pre-trial rulings, it is also false and misrepresents the true facts. The Court reminds you that opening statements are not evidence.
>
> Mr. _____ the Court admonishes you for violating my pre-trial order on this subject. There should be no further reference to it.

The trial court refused this instruction and informed Appellant's Counsel that it would consider another, more abstract instruction about not considering Appellant's hiring of counsel in rendering a verdict. The trial court suggested "something along the lines of when and if" a plaintiff hires an attorney, should not be considered in the jury's rulings. The trial court noted that Appellant's proposed instruction was prejudicial to the defendant. Appellant renewed the motion for mistrial, which was also denied.

7

Appellant's Counsel then requested that counsel be permitted to provide rebuttal evidence showing why Appellant saw an attorney in the first instance because the "door has been opened." While the proposed evidence is not specifically described in the record, Appellant's Counsel suggested that it was because "representatives for the defendant were talking to her and doing some things that she thought she needed a lawyer." Defense Counsel responded that he had not mentioned circumstances why the plaintiff saw an attorney and that the issue did not need to be addressed. The trial court denied the Appellant's request, but reminded counsel to make no further references to when Appellant hired an attorney.

During the instruction conference outside of the presence of the jury, Appellant presented a revised proposed instruction marked Exhibit ZZ, which was the same as the first except for deletion of the word "improper" and the reference to Defense Counsel violating pre-trial rulings and misstating the facts. Exhibit ZZ specifically modified the first proposed instruction as follows:

> Plaintiff's Proposed Instruction and admonishment:
> Yesterday during opening Statement, the attorney for the defendant said:
> "The plaintiff had been discharged from PT, discharged from chiropractic care. She meets her lawyer. She signs up with the lawyer and she gets referred by the lawyer (with regard to physical therapist Josh Borgmeyer)."
>
> You must disregard this ~~improper~~ statement and not consider it in arriving at your verdict. ~~Not only did the statement violate the Court's pre-trial rulings, it is also false and misrepresents the true facts.~~ The Court reminds you that opening statements are not evidence.
>
> Mr. _____ the Court admonishes you for violating my pre-trial order on this subject. There should be no further reference to it.

The trial court also refused this instruction. Appellant again moved for a mistrial, which was again denied. Notably, Defense Counsel complied with the trial court's direction and made no further comment on Appellant retaining an attorney after the opening statement.

*Point I*

Appellant's first point alleges the trial court abused its discretion in denying Appellant's motion for mistrial after Respondent's counsel, during opening statement, made comments about the timing when Appellant met her lawyer, signed a contract for representation with her lawyer, and was referred by her lawyer for medical treatment. Appellant alleges the comments inflamed the jury and prejudiced Appellant.

*Standard of Review*

Counsel is granted wide latitude during opening statements to make a good-faith presentation of what counsel expects the evidence will show. *Spence v. BNSF Railway Co.*, 547 S.W.3d 769, 780 (Mo. banc 2018). The scope of opening statements is within the trial court's discretion, and review is only for an abuse of that discretion, as explained, *supra*.

Moreover, the standard of review for the court's denial of a motion for mistrial is a heightened one, reviewing not just for an abuse of discretion, but a "*manifest* abuse of discretion." *Peel v Credit Acceptance Corp.*, 408 S.W.3d 191, 215 (Mo. App. W.D. 2013) (emphasis added). A mistrial is a drastic remedy and "should be reserved for the most grievous error where prejudice cannot otherwise be removed." *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 208 (Mo. banc 1991).

*Analysis*

Appellant concedes the admissibility of the evidence that she followed her attorney's recommendation for physical therapy with Josh Borgmeyer. However, she argues the defense's tactic to dispute causation of Appellant's mid-back injury and attack the nature and extent of damages by attacking her credibility through comments about when Appellant engaged with her attorney was prejudicial and constituted reversible error. Appellant argues the court abused its

discretion in denying Appellant a mistrial pursuant to three appellate decisions from the Western District of Missouri, in which comments, statements, or testimony about when a party engages with a lawyer were determined prejudicial. *See Carlyle v Lai*, 783 S.W.2d 925 (Mo. App. W.D. 1989) (in parents' action seeking damages from an emergency room physician for causing their son's death, the Court held the purpose of the defense's questions on hiring an attorney "just 15 days after [their son] died . . . ," was only to make the plaintiffs appear litigious and avaricious, which constituted prejudice); *Yingling v. Hartwig*, 925 S.W.2d 952, 954 (Mo. App. W.D. 1996) (the trial court abused its discretion in permitting the defense's expert to testify there was a difference in the length of time that subjective complaints of injury persist with a patient involved in litigation as compared to a patient not involved in litigation, suggesting the plaintiff was not credible based on a right to utilize the judicial system and seek recovery for injuries); *Nguyen v. Haworth*, 916 S.W.2d 887, 889 (Mo. App. W.D. 1996) (trial court erred in allowing questions to the mother of the injured child and closing statement discrediting the plaintiffs' attempt to profit from their child's injury by use of the legal system). However, we find these opinions inapplicable to Appellant's case.

Here, the defense's purpose for referencing Appellant's retention of counsel was used in conjunction with a calendar display to highlight the timing and circumstances of Appellant's further treatment, after she had completed initial treatment and the pain had resolved. Unlike in *Carlyle*, *Yingling* and *Nguyen*, Respondent here made no attempt to suggest Appellant sued based on a litigious nature, greed, or to profit from her injury. Appellant did not quickly jump into litigation, but took time to seek medical treatment. While the context of Appellant's retention of an attorney may have been unnecessary to highlight the relevant gap in medical treatment, it did not attempt to connect Appellant's injuries with the pendency of her lawsuit or

use of the judicial system.  Appellant did not seek economic damages and presented no medical bills at trial.  The defense here very specifically explained actions taken by Appellant in seeking treatment, without discussing any generally prejudicial behaviors.  The defense did not argue Appellant's case was opportunistic and brought merely for money, but that Appellant had actually received some treatment before she even met with her attorney.  Indeed, the jury was well aware that Appellant had retained an attorney to represent her in this matter even without Defense Counsel stating it.  Appellant also does not dispute that she sought additional treatment based on her counsel's recommendation.  The defense's mere mention that Appellant hired an attorney was not prejudicial.

We find the statement was not a "most grievous error" and did not prejudice Appellant such that a mistrial was warranted.  No manifest abuse of discretion occurred when the trial court denied the drastic remedy of a mistrial.  Appellant's first point is denied.

*Point II*

Appellant's second point alleges the trial court abused its discretion in denying Appellant's motion for new trial because the court erred in denying Appellant's request to issue curative instructions that the jury disregard Defense Counsel's prejudicial comments in opening statement about Appellant's retention of a lawyer for representation, and to admonish Respondent's counsel for making the comments.

*Standard of Review*

The trial court's refusal to give a curative instruction is reviewed for an abuse of discretion.  *State v. Byers*, 551 S.W.3d 661, 667 (Mo. App. E.D. 2018).  This standard is discussed *supra*, as it is used throughout this opinion.  Although issuing a curative instruction is not always an abuse of the trial court's discretion, *Bowls v. Scarborough*, 950 S.W.2d 691 (Mo.

11

App. W.D. 1997), refusing a curative instruction is also based on that same judicial discretion. *Ashbridge v. Gen. Motors Corp.*, 797 S.W.2d 775, 781 (Mo. App. E.D. 1990).

*Analysis*

Cautionary or curative instructions are both accepted and well-respected in Missouri law. *French v. Missouri Highway & Transp. Comm'n.*, 908 S.W.2d 146, 152 (Mo. App. W.D. 1995). However, the trial court has discretion to determine whether a cautionary instruction should be given and to determine the proper kind. *Morris v. E.I. Du Pont De Nemours & Co.*, 173 S.W.2d 39, 42 (Mo. 1943). It is not an abuse of discretion to refuse a misleading or inaccurate instruction. *See Shurtz v. Jost*, 597 S.W.2d 652, 655 (Mo. App. E.D. 1979). It is also not an abuse of discretion to determine one should avoid calling attention to an objectionable statement by repeating it. *See Byers*, 551 S.W.3d at 668; *State v. Russell*, 533 S.W.3d 807, 815 (Mo. App. E.D. 2017) (the refused curative instruction would have only called attention to and amplified an otherwise isolated comment).

Upon objection, the trial court specifically directed Defense Counsel to make no further references to when Appellant hired her attorney, and would later consider a curative instruction. Moreover, during argument for a mistrial, even Appellant noted the damning effects of highlighting the comment by use of a curative instruction. Despite being given the opportunity to provide such instruction, Appellant proposed two instructions that did not serve the intended purpose. Instead, the proposed instructions created more confusion and prejudice than value, and thus, were properly rejected. Specifically, Appellant's proposed instruction, Exhibit Z, repeated for the jurors' memory the statement regarding Appellant hiring her attorney, and then it instructed the jurors to erase it from memory by disregarding it as improper. This instruction reasoned that the statement "violate[d] the Court's pre-trial ruling, [and] is also false and

misrepresents the true facts." However, the jurors had no knowledge of this referenced ruling, nor were they told what facts were true or false. The instruction further admonished Defense Counsel for a statement that may have otherwise gone unnoticed by the jury.

The trial court had clearly and carefully considered this matter in denying the proposed instruction. The court determined that Appellant's proposed curative instruction Z went "way, way, way too far." The trial court even suggested an instruction it would approve, specifically something more abstractly advising the jury not to consider when and if a plaintiff hires an attorney. Appellant opted to ignore the trial court's sage direction. Rather, Appellant provided Exhibit ZZ, which only slightly modified the first proposed instruction. Instruction ZZ still repeated the specific statement in dispute before it instructed the jury to disregard it, which only highlighted the objectionable statement. Moreover, while both proposed instructions reminded the jury that opening statements are not evidence, Instruction 1, MAI 2.01, gave the exact same direction to the jury. Finally, both instructions admonished Defense Counsel for violating a pre-trial order and stated there should be no further reference to "it," but this would only confuse jurors because the pre-trial issues were not discussed in the presence of the jury, the instruction did not clarify what "it" denoted, and the admonishment did not distinguish whether Appellant's hiring of counsel was improper or whether counsel's recommendation of additional care from a new physical therapist was improper.

The trial court did not abuse its discretion in denying a poorly drafted curative instruction that would have caused more harm than good. The court carefully considered this matter and its decision was not against the logic of the circumstances. Point II is denied.

*Point III*

Appellant's third point alleges the trial court abused its discretion in denying her motion for new trial when it denied Appellant's request to introduce evidence to rebut Respondent's counsel's comments during opening statement because the comments prejudiced her. Respondent argues Appellant failed to make a record of the refused evidence for purposes of appellate review, and regardless, there was no error in the trial court's refusal to admit the evidence of pre-trial settlement negotiations to rebut a comment that Appellant hired an attorney.

*Preservation of Record*

Generally, a definite and specific offer of proof is required to preserve the issue of whether testimony was erroneously excluded. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983). A specific offer of proof is necessary to enable the trial court to intelligently rule on the testimony's admissibility and for the appellate court to intelligently review the trial court's decision. *State v. Sullivan*, 553 S.W.2d 510, 513 (Mo. App. 1977). To make an offer of proof, counsel must put forth the proposed questions to the present witness who has taken the stand. *Karashin*, 653 S.W.2d at 205. The offer of proof must be more than "a mere statement of the conclusions of counsel." *Sullivan*, 553 S.W.2d at 513 (quoting *Kinzel v. W. Park Inv. Corp.*, 330 S.W.2d 792, 795-96 (Mo. 1959)).

The only exception to the offer of proof requirement exists when the excluded testimony is completely understood through the record, is objected to as a category of evidence rather than as specific testimony, and the record reveals that the evidence would have helped the party which put it forth. *Frank v. Envtl. Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 883-84 (Mo. banc 1985). This narrow exception recognizes that the purpose behind the offer of proof is to insure that the trial court has a clear understanding of the evidence it rules upon and that the appellate court has

14

a specific record to review. If the testimony is known to all parties, then an offer of proof is unnecessary. *Hawkinson Tread Tire Serv. Co. v. Walker*, 715 S.W.2d 335, 336 (Mo. App. E.D. 1986).

*Standard of Review*

As discussed *supra*, "[a] trial court enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." *Kappel v. Prater*, 599 S.W.3d 189, 192 (Mo. banc 2020) (quoting *Cox v. Kan. City Chiefs Football Club*, 473 S.W.3d 107, 114 (Mo. banc 2015)).

*Analysis*

Appellant's only offer of proof was her counsel's request to question Appellant about the reason she saw an attorney, because the "door has been opened" and because "representatives for the defendant were talking to her and doing some things that she thought she needed a lawyer." This was not definite and specific evidence as required, nor did it fall into a category of evidence completely understood through the record. The "proposed exhibit" or correspondence from Respondent's insurance company offering to settle the claim was not presented to the trial court to preserve this alleged error on appeal. Appellant's submission of the evidence for the first time in a motion for new trial also failed to timely present her claim. "Allegations of error in a motion for new trial may not be changed or broadened on appeal." *State v. Johnson*, 358 S.W.3d 574, 576 (Mo. App. S.D. 2012) (citing *State v. Cobb*, 336 S.W.3d 201, 205 (Mo. App. S.D. 2011)). Appellant's attempt to urge that she should have been able to present specific rebuttal evidence at trial was not raised at trial and is not preserved for appellate review.

Even the merits of Appellant's argument fail to demonstrate the trial court abused its discretion in denying the admission of evidence to explain Appellant's hiring of her attorney.

15

When Appellant made the request, Defense Counsel responded that he had not mentioned why the plaintiff saw an attorney and that the issue did not need to be addressed. We agree Defense Counsel's statement regarding Appellant retaining counsel was mentioned at the focal point of Appellant's significant gap in her treatment and the additional treatment she sought after a recommendation from her attorney. Appellant's decision to retain an attorney needed no further explanation. The evidence would not have helped remedy any wrongdoing the defense may have committed during its opening statement. Similar to Appellant's proposed curative instructions, the evidence would have highlighted Defense Counsel's opening statement, in addition to potentially bringing improper settlement discussions and collateral matters to the jury's attention, causing distraction from the main issues of the case.

The trial court's refusal to admit Appellant's general rebuttal evidence was not an abuse of discretion. Appellant's third point is denied.

### *Point IV*

Appellant's fourth point alleges the trial court abused its discretion in denying Appellant's motion for new trial when it allowed Respondent to introduce evidence of medical treatment and argue that unrelated treatment was the cause of Appellant's pain. Appellant's point asserts the 2019 urgent care visit was improperly presented to the jury, and mentions statements made about causation. She argues the evidence was irrelevant, inadmissible, outside the scope of the pleadings, and devoid of expert testimony to establish a causal connection and thereby prejudiced Appellant. Respondent contends evidence of other treatment was admissible because Appellant's condition before and after the accident was relevant to show the nature, scope and causation of her claimed damages, and it was legally and logically relevant.

16

Prior to trial, Appellant submitted a motion in limine requesting exclusion of any evidence or argument regarding Appellant's "prior un-related treatment of different body parts," which Appellant argued would include prior chiropractic treatment for her hip/lower back. The trial court denied the motion. During trial, Appellant renewed the objection to any mention of unrelated injuries or treatment to Appellant's hip and lower back. The trial court denied the objection on the basis that Appellant's quality of life and pain levels before the accident were relevant.

On cross-examination, Appellant admitted she had not informed physiatrist Dr. Hurford that she had gone to a chiropractor for lower back pain about a year and a half before the accident, and that she had denied ever experiencing any lower back pain before the accident. Over Appellant's objection, the defense noted records from two 2015 chiropractic visits regarding a back examination where Appellant described a sharp, constant pain that made every day activities more difficult. Appellant explained that despite the examination being identified as a low back examination, she was actually seeking treatment for hip pain related to her sciatic nerve, and that the issue had resolved.

After Appellant testified, Appellant introduced video recorded testimony of her expert, Dr. Blake. Dr. Blake testified she was provided the 2015 chiropractic records, but concluded they did not contain any evidence suggesting that Appellant's injuries pre-existed the accident. Dr. Blake explained that the records addressed only treatment for "pain in her low back" as opposed to the mid-back.

Appellant's opening statement began with a story about Appellant going on a bike tour in San Antonio in 2019, but she was unable to complete the tour due to pain caused by the accident. Appellant later testified to the same story, explaining the tour was twelve miles long but she only

17

made it halfway because she was in "excruciating pain." Appellant used this story as an example of how her quality of life had suffered since the accident.

During cross-examination, Defense Counsel showed a record of Appellant's visit to an urgent care shortly after returning from San Antonio. The record showed that Appellant had sought treatment for sore throat, cough, congestion, chills, and body aches that had started approximately four days earlier. The record further notes Appellant had indicated that she had recently traveled by airplane with her boyfriend, who was also sick. Appellant did not report any back pain. Appellant was tested and diagnosed with Influenza A. Appellant objected to this evidence as unrelated medical treatment, which was overruled.

Additionally, before closing arguments, Appellant's Counsel moved to exclude any argument that Appellant's pain was caused by something other than the accident because Respondent had produced no expert to testify on causation. The trial court ruled that Defense Counsel should not argue that any single, specific event caused the injury, but could more generally suggest other potential causes of the injury to negate Appellant's causation argument. Appellant's Counsel stated that if he heard anything that crossed the line during Respondent's closing, he would bring it up. Appellant made no objections during Respondent's closing argument.

*Standard of Review*

A trial court has broad discretion in determining whether to grant a new trial. *Precision Elec., Inc. v. Ex-Amish Specialties, Inc.*, 400 S.W.3d 802, 808 (Mo. App. W.D. 2013). Its decision is presumed correct and will be reversed on appeal only for an abuse of discretion. *Id.* The trial court's power is discretionary when ruling on a motion for a new trial only regarding fact questions, not questions of law. *Id.* To the extent our analysis requires us to weigh the

18

evidence, we do so in the light most favorable to the trial court's order. *Id.* "In order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial." *Balke v. Cent. Mo. Elec. Coop.*, 966 S.W.2d 15, 25 (Mo. App. W.D. 1997). Moreover, a trial court enjoys considerable discretion in the admission or exclusion of evidence, and, without a clear abuse of discretion, its action will not be grounds for reversal. *Kappel*, 599 S.W.3d at 192 (quoting *Cox*, 473 S.W.3d at 114). The abuse of discretion standard was discussed *supra*.

*Analysis*

Appellant's Petition claimed only non-economic damages stemming from injury to her mid-back, and thus, argues only evidence of prior treatment to the same body part is admissible. However, "[i]n a personal injury action the health and physical condition of the injured person prior and subsequent to the accident is material and any competent evidence tending to prove or disprove the nature and extent of the injuries alleged to have been received is admissible." *Eickmann v. St. Louis Pub. Servs. Co.*, 323 S.W.2d 802, 806 (Mo. 1959). Therefore, injuries to the same or similar body parts are admissible. *Id.* at 807. The defendant need not prove the prior injuries were still in existence at the time of the injury complained of in the lawsuit because a "defendant is aided by the presumption that a physical or mental condition shown to exist at one time continues until a change is shown." *Id.*

The plaintiff has the burden to show, by substantial evidence, that she was injured and that a causal connection exists between the injury and the accident. *Williams v. Jacobs*, 972 S.W.2d 334, 340 (Mo. App. W.D. 1998). A defendant may challenge this connection without having to establish an alternative causation theory through expert testimony or otherwise. *See Lands v. Boyster*, 417 S.W.2d 942, 946 (Mo. 1967) (cross-examination suggesting other potential

19

causes of injury was permissible even if framed only as "possibilities"); *Roberts v. Missouri Highway & Transp. Comm'n*, 222 S.W.3d 322, 333 (Mo. App. S.D. 2007); *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 710 (Mo. App. E.D. 2020) (defendant's cross-examination about other potential causes may go to the weight of such testimony).

Further, evidence must be logically and legally relevant to be admissible. *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017). "Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2000). Evidence is determined legally relevant by "weigh[ing] the evidence's probative value against [its costs—] unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Johnson v. State*, 406 S.W.3d 892, 902 (Mo. banc 2013).

Appellant argues Respondent was improperly permitted to argue Appellant had a pre-existing injury despite not having an expert to establish a causal link to a previous injury. However, Appellant introduced evidence from herself and her experts that the mid-back injury was not preexisting. Respondent simply cross-examined Appellant's witnesses to challenge her theories. The witnesses were questioned about the information upon which they relied, including the chiropractic records involving pain reported in a similar area of Appellant's body (her back) that she claimed was injured in the accident. Respondent did not attempt to present expert evidence regarding an alternative causation theory. Because the health and physical condition of the injured person prior and subsequent to the accident is material, Respondent's competent evidence of prior injuries to a similar body part was admissible to disprove the severe nature and extent of the injuries alleged to have been received in the accident. *Eickmann*, 323 S.W.2d at

20

806. Finding no fault in Respondent's method of challenging Appellant's theory of causation, we review the legal and logical relevance of Respondent's evidence.

Appellant argues her Petition only sought damages for pain and suffering concerning her mid-back, and evidence of medical treatment for any other body part was irrelevant and inadmissible. She argues evidence of two prior chiropractic visits for hip and/or lower back issues were improperly admitted, as was a post-accident visit to urgent care for a flu diagnosis. Appellant argues her expert testified the chiropractic records did not suggest that Appellant's injuries were preexisting, and thus, Respondent needed an expert to testify to suggest the opposite. However, we find the defense's introduction of evidence demonstrating holes in Appellant's claim that the accident decreased her quality of life was well within the parameters of the legal and logical relevance requirements for this case. The evidence of prior chiropractic visits and even the flu diagnosis tend to make the existence of Appellant's claim that the accident caused her pain and worsened her quality of life less probable than it would be without the evidence. It was therefore logically relevant.

Further, the disputed evidence is legally relevant in that Appellant first claimed loss in her quality of life. The defense's rebuttal evidence had more probative value on the same issue than it would cause harm, either through prejudice, confusion or misleading the jury, delay, or cumulativeness. *Johnson*, 406 S.W.3d at 902. After the evidence was presented that Appellant received prior care for her low back, Appellant still had the opportunity to demonstrate the difference between her low back and mid back, she provided testimony that her prior injuries had resolved before the accident, and her expert Dr. Blake testified that the injuries at issue were not preexisting the accident. With ample opportunity to explain, we find the evidence at issue did not cause undue prejudice to Appellant.

21

It is clear from Appellant's initial claim of her reduced quality of life, highlighted by Appellant's story of her consequent challenges and pain in the 2019 San Antonio bike tour, that Appellant opened the door to a comparison of evidence of her condition prior to and following the accident as well as to the medical treatment she received immediately upon her return from San Antonio. The evidence was both legally and logically relevant and the trial court's admission of evidence related to this issue was not an abuse of its discretion. Further, the trial court did not abuse its discretion in denying Appellant's motion for a new trial based on this admission. Appellant's fourth point is denied.

### Point V

Appellant's fifth point alleges the trial court abused its discretion in denying Appellant's motion for new trial when it excluded evidence of Respondent's prior abandoned pleading and overruled Appellant's request to recall the Respondent to impeach her with her prior inconsistent statement about Respondent never trying to shirk responsibility in that such error prejudiced Appellant.

Respondent's initial Answer to Appellant's Petition denied all allegations of negligence, but Respondent filed an Amended Answer shortly before trial admitting fault for the accident. During opening statements, Appellant's Counsel attempted to argue that Respondent had just recently admitted fault for the accident. Respondent objected because fault was not at issue, and Appellant's Counsel agreed to strike the statement. Then during Respondent's opening statement, counsel noted Respondent was "not here to shirk her responsibilities for the crash," and had given deposition testimony admitting to rear-ending Appellant's vehicle. She "has never tried to shirk responsibility for causing this accident," her counsel stated. Appellant's Counsel asked for a sidebar and stated, "I think we've got the popcorn in the kettle," but specified no

22

objection.  The trial court instructed Defense Counsel to save the argument for closing and the trial resumed.

During cross-examination, Appellant's Counsel attempted to ask Respondent about the defense's statement regarding shirking responsibility, and asked whether it was "not exactly true" that she had never tried to avoid responsibility.  Respondent stated it was "absolutely true" over her counsel's objection.  Appellant's Counsel then attempted to ask about Respondent's Amended Answer admitting fault filed shortly before trial, to which the defense again objected.  Appellant's counsel argued the opening statement had "opened the door" to the otherwise inadmissible prior pleading.  The trial court determined the defense's statement was merely in response to Appellant's Counsel's statement in opening that Respondent had only recently accepted responsibility, denied admission of the prior Answer into evidence, and instructed both parties to made no further reference to when responsibility was accepted because fault was not at issue.

The following day, Appellant's Counsel asked to recall Respondent to the stand so he could impeach her with her prior Answer, which Appellant's Counsel claimed conflicted with her testimony that she had never shirked responsibility for the accident.  The trial court denied the request.

*Standard of Review*

As discussed in Point IV, *supra*, a trial court has broad discretion in determining whether to grant a new trial.  *Precision Elec., Inc.*, 400 S.W.3d at 808.  Moreover, a trial court enjoys considerable discretion in the admission or exclusion of evidence.  *Kappel*, 599 S.W.3d at 192 (quoting *Cox*, 473 S.W.3d at 114).  Further, a trial court also has discretion to allow or disallow

23

the recall of a witness and, without a clear abuse of discretion, its action will not be grounds for reversal. *Callicoat v. Acuff Homes, Inc.*, 723 S.W.2d 565, 569 (Mo. App. W.D. 1987).

*Analysis*

Appellant attempted to use Respondent's prior Answer denying fault in the accident to impeach Respondent's credibility because Respondent told the jury she did not want to "shirk responsibility" for the accident, now that Respondent had amended her Answer and admitted fault. We find this evidence to be irrelevant to the issues of the case and would have confused the jury with a collateral matter. Thus, the exclusion of this prejudicial evidence was not an abuse of the court's discretion.

Pleadings are addressed to the court, not to the jury, and therefore, they are generally inadmissible in evidence because "they do not possess the characteristics inherent in admissions against interest." *Littell v. Bi-State Transit Dev. Agency*, 423 S.W.2d 34, 39 (Mo. App. 1967) (quoting *Johnson v. Flex-O-Lite Mfg. Corp., Mo.*, 314 S.W.2d 75, 79 (Mo. 1958)); *Sherrer v. Boston Scientific Corp.*, 609 S.W.3d 697, 709-14 (Mo. banc 2020). A pleading such as Respondent's Amended Answer, which superseded her original Answer, may be admitted for admissions against a pleader's interest, but the admissions must go to factual assertions, not legal conclusions. *See Wors v. Glasgow Village Supermarket, Inc.*, 460 S.W.2d 583, 590 (Mo. 1970). A prior pleading's allegations concerning causation are legal conclusions, not facts, and cannot be used as admissions against interest. *Id.*

Based on Appellant's argument that the pleading would be used to impeach Respondent's credibility, the initial Answer denying fault would essentially use a legal conclusion of negligence against her. Therefore, it would have been error to allow Appellant to recall Respondent to impeach her with such evidence. Further, it was well known by all parties to this

24

action that fault was not at issue during trial, so Respondent's original Answer denying fault was irrelevant to the jury's decision. Appellant's attempt to impeach Respondent with this collateral evidence was rightfully denied.

The trial court did not abuse its discretion in refusing to admit this evidence and denying Appellant's motion for new trial based on this refusal. Point V is denied.

### *Point VI*

Appellant's sixth and final point alleges the trial court erred in denying her motion for new trial because the cumulative effect of the errors set forth herein resulted in substantial prejudice and injustice that Appellant was deprived of a fair trial and was subjected to a minimal damages award. Respondent argues Appellant has proven no errors, and especially no prejudicial errors, so that there should not have been a new trial based on a cumulative effect of errors.

### *Standard of Review*

As explained in Points IV and V, *supra*, a trial court has broad discretion in determining whether to grant a new trial. *Precision Elec., Inc.*, 400 S.W.3d at 808. Moreover, a trial court enjoys considerable discretion in the admission or exclusion of evidence, and, without a clear abuse of discretion, its action will not be grounds for reversal. *Kappel*, 599 S.W.3d at 192 (quoting *Cox*, 473 S.W.3d at 114).

### *Analysis*

"An appellate court may grant a new trial based on the cumulative effects of errors, even without a specific finding that any single error would constitute grounds for a new trial." *State v. West*, 551 S.W.3d 506, 525 (Mo. App. E.D. 2018) (citing *Koontz v. Ferber*, 870 S.W.2d 885, 894 (Mo. App. W.D. 1993)). "However, relief will not be granted for cumulative error when there is

25

no showing that prejudice resulted from any rulings of the trial court." *Id.* Here, in her identified points on appeal, Appellant "has failed to persuasively identify any error during the trial, [and therefore] the point must fail." *Giles v. Riverside Transp., Inc.*, 266 S.W.3d 290, 300 (Mo. App. W.D. 2008). Additionally, given the jury's $15,000 award, three times the $3,000 amount argued as proper by Respondent, Appellant fails to show that the alleged errors resulted in manifest injustice. Point VI is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
Lisa P. Page, Judge

Robin Ransom, P.J. and
Sherri B. Sullivan, J., concur.